**Jimmy Larry FRANKLIN, Appellant,**

v.

**Jack KYLE, Individually, and in his Official Capacity as Director of the State of Texas, Board of Pardons and Paroles, Appellee.**

No. 10–94–211–CV.

Court of Appeals of Texas, Waco.

May 17, 1995.

Rehearing Overruled June 21, 1995.

Melinda H. Barlow, Waco, for appellant.

Dan Morales, Atty. Gen., Jorge Vega, First Asst. Atty. Gen., Ann Kraatz, Asst. Atty., Gen., Chief, Law Enforcement Defense Div., Drew T. Durham, Deputy Atty. Gen. for Criminal Justice, and Shawn Fitzpatrick, Asst. Atty. Gen., Austin, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

### OPINION

CUMMINGS, Justice.

Appellant Jimmy Larry Franklin appeals the denial by the 74th District Court of McLennan County of a petition to enjoin Jack Kyle, Director of the Board of Pardons and Paroles (the Board), from proceeding

with his parole revocation hearing. We dismiss for want of jurisdiction.

Franklin was an inmate of the Texas Department of Corrections–Institutional Division until released on parole on or about March 12, 1993. The record does not indicate either the court in which Franklin was convicted or the offense he committed. On or about February 28, 1994, a "blue warrant" was issued for his arrest, alleging he had violated the conditions of his parole by possessing a certain amount of cocaine in violation of TEX.HEALTH & SAFETY CODE ANN. § 481.115 (Vernon Supp.1995).[1] On March 22 an arraignment order was entered in the 54th District Court against Franklin, accepting his plea of guilty for violating section 481.115.

Sometime before May 13 Franklin was notified that a parole revocation hearing was to be held on May 18 to determine whether his parole should be revoked. Franklin's attorney, Melinda Barlow, in preparation for the hearing, met with Franklin to discuss his case. From her conversations with him, she came to the conclusion that he was mentally incompetent. Believing that his state and federal constitutional rights would be violated if the hearing proceeded while he was incompetent, she decided to pursue measures to prevent the hearing from going forward until Franklin's mental competency could be established.

On May 13 the 74th District Court granted Franklin a temporary restraining order, enjoining Kyle from conducting Franklin's parole revocation hearing prior to a determination of competency. On May 16 Franklin sent a "Motion for Hearing on Incompetency to Stand for Hearing" to Leonard Dixon, the hearing officer from the Board assigned to Franklin's case. The parole revocation hearing was convened as scheduled on May 18 at the McLennan County Jail. At that time, Franklin presented to Dixon the temporary restraining order from the 74th court. Dixon continued the hearing to a later date. On May 27 in the 74th court Franklin sought a temporary injunction. After oral argument, the court denied the temporary injunction

and granted Kyle's motion to dissolve the temporary restraining order. Franklin appeals to this court.

Through three points of error, Franklin argues: 1) the 74th court has jurisdiction to enjoin Kyle, a state official, in his official capacity from acting outside his legal authority; 2) Franklin, because he is faced with a constitutional injury, may properly seek an injunction to prevent Kyle from proceeding with the hearing; and 3) Franklin's due process rights under the federal and Texas constitutions would be violated if the hearings went forward while he was incompetent. We will initially address the issue of whether an injunction will properly lie to prevent the injury about which Franklin complains.

Franklin, in bringing this petition for an injunction, is asking for declaratory relief. Nowhere in either his brief or his pleadings before the trial court does he specifically articulate this intention, but in asking the trial court to enjoin the carrying out of his parole revocation hearing because the Board's rules fail to provide him a competency hearing, he necessarily requested the trial court to construe the Board's rules and determine whether his rights would be infringed by them. *See* 37 TEX.ADMIN.CODE ANN. § 145.1 et seq. (Vernon Supp.1994). Accordingly, we will treat his petition for injunctive relief as including a suit for declaratory judgment. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 37.003(a) (Vernon 1986); *see also* TEX. R.CIV.P. 71; *Katzenbach v. McClung,* 379 U.S. 294, 295, 85 S.Ct. 377, 379, 13 L.Ed.2d 290 (1964).

Franklin could have his rights under the Board's rules declared in a post-incarceration habeas corpus petition. *See Ex Parte Snow,* 899 S.W.2d 201 (Tex.Crim.App.1995). Apparently, however, Franklin finds this remedy inadequate because it would require his incarceration before he could make his argument. Some authority, albeit persuasive rather than mandatory, does exist to support Franklin's claim that declaratory judgment suits may be brought to enable administrative releasees, who prospectively face a loss

---

1. A "blue warrant" is an arrest warrant issued when a parolee has been suspected of violating

the conditions of his probation. TEX.CODE CRIM. PROC.ANN. art 42.18, § 13(a) (Vernon Supp.1995).

of their liberty at the hands of the Board, to question the constitutionality of the Board's rules whose application would adversely affect the releasee. *See State ex. rel. Holmes v. Honorable Court of Appeals For the Third Dist.*, 885 S.W.2d 389, 396 n. 11 (Tex.Crim. App.1994) (constitutionality of administrative rules can be addressed in declaratory judgment suit); *id.* at 409 n. 5 (Clinton, J., dissenting) (same holding); *State v. Morales*, 869 S.W.2d 941, 942 (Tex.1994) (the constitutionality of criminal statutes, under certain narrow circumstances, may be prospectively determined by a civil court). The question before us is whether any legal vehicle exists for Franklin to litigate his argument prospectively instead of waiting until he is incarcerated to file a habeas petition. For the reasons stated below, we conclude that Franklin's only method of redress is to file a post-incarceration petition for a writ of habeas corpus.

■ Franklin contends the enforcement of the Board's rules may be enjoined because such will result in an infringement upon his constitutional rights. He argues that a district court may issue an injunction to prevent a parole revocation hearing from going forward when the administrative releasee's constitutional rights will be violated. *See* TEX. CIV.PRAC. & REM.CODE ANN. § 65.011 (Vernon Supp.1995); *see also Passel v. Fort Worth Ind. Sch. Dist.*, 440 S.W.2d 61, 63 (Tex.1969) (administrative rule designed to implement an unconstitutional penal code provision could properly be enjoined); *see also Dallas County v. Sweitzer*, 881 S.W.2d 757, 769 (Tex.App.—Dallas 1994, writ denied). As a general rule, public officials may be enjoined from carrying out their legislatively assigned duties when such would cause irreparable injury or result in a multiplicity of suits. *Sweitzer*, 881 S.W.2d at 769. Franklin asserts his constitutional right to a competency hearing would be violated, and he would suffer an irreparable injury, if Kyle proceeded with his intention to conduct Franklin's parole revocation hearing without any prior determination of his mental competency.

Both parties argue that the characterization of a parole revocation hearing as either a criminal or an administrative matter will determine the outcome of this issue. The basic thrust of Franklin's argument is that parole revocation hearings are administrative in nature and, therefore, the actions of the Board are the proper subject of an injunction whether or not criminal law matters are implicated in the hearings. Kyle, on the other hand, asserts that because parole revocation hearings, and the Board's rules in the establishment thereof, involve criminal law matters, they are not susceptible to the equitable powers of the district courts. Kyle relies primarily upon *Holmes* in support of his argument.

While we do not believe a facile characterization of parole revocation hearings as either administrative or administrative-affecting-criminal-law-matters will adequately dispose of this issue, a detailed discussion of *Holmes* is helpful. In *Holmes* a criminal defendant, Gary Graham, was sentenced to death in the 182nd District Court of Harris County. *Id.* at 390. His conviction and punishment were affirmed by the Court of Criminal Appeals in *Graham v. State*, 671 S.W.2d 529 (Tex.Crim. App.1984). *Holmes*, 885 S.W.2d at 390. Contending his conviction and punishment were unlawfully obtained, he sought habeas corpus relief in both state and federal courts. His first habeas corpus petition in state court was denied in *Ex Parte Graham*, (Tex.Crim. App. No. 17,568–01, delivered February 19, 1988) (not published). *Holmes*, 885 S.W.2d at 390. He then unsuccessfully petitioned the federal courts for habeas relief in *Graham v. Collins*, 950 F.2d 1009 (5th Cir.1992) (en banc); *and, Graham v. Collins*, — U.S. ——, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993). *Holmes*, 885 S.W.2d at 390. Graham filed a second state petition for habeas relief, and the Court of Criminal Appeals stayed his execution pending the Supreme Court's decision in *Johnson v. Texas*, — U.S. ——, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993). *Holmes*, 885 S.W.2d at 390. The stay expired by its own terms and the Supreme Court denied certiorari in *Graham v. Texas*, — U.S. ——, 113 S.Ct. 2431, 124 L.Ed.2d 651 (1993). *Holmes*, 885 S.W.2d at 390.

During the pendency of his habeas petitions, Graham twice requested executive clemency from the Board. *Id.* at 391. His

first request was denied, but then-Governor Ann Richards granted him a thirty day reprieve on his second request. *Id.* Graham requested executive clemency a second time, but the Board did not act upon it because of the Court of Criminal Appeals' aforementioned stay of his execution. *Id.*

Upon expiration of the stay, the 182nd District Court ordered Graham's execution before sunrise on August 17, 1993. *Id.* On July 21, 1993, Graham filed a suit for declaratory judgment in the 299th District Court of Travis County, seeking an order to compel the Board to hold a hearing on his request for clemency. *Id.* The 299th court agreed and entered a temporary injunction requiring the Board to hold a hearing on or before August 10, 1993, or to reschedule Graham's execution until such a hearing could be held. *Id.* The Board appealed to the Third Court of Appeals, which issued a writ of injunction enjoining the Board from proceeding with the execution. *Id.*

The matter was then brought to the Court of Criminal Appeals by writ of prohibition and mandamus. *Id.* Kyle relies upon the court's ruling that neither the 299th District Court nor the Third Court of Appeals had jurisdiction to enjoin the carrying out of Graham's execution, *see id.* at 395–96, in support of his argument that the 74th District Court has no jurisdiction to enjoin Franklin's parole revocation hearing.

The holding in *Holmes*, however, is much narrower than what Kyle portends. The specific issue decided by the *Holmes* court was whether the Third Court of Appeals, sitting as a civil court, could enjoin the carrying out of an execution that had been mandated by the Court of Criminal Appeals. *Id.;* *see also* TEX.CODE CRIM.PROC.ANN. art. 42.04 (Vernon Supp.1995). In reaching the conclusion that neither the district court nor the court of appeals could do so, the Court of Criminal Appeals first had to address the issue of whether it had the jurisdiction to compel the Third Court to vacate its order through a writ of mandamus. *Holmes*, 885 S.W.2d at 392–96. The court concluded that the enjoining of an execution involved a criminal law matter, and as the Court of Criminal Appeals has mandamus jurisdiction over

criminal law matters, it had the authority to order the Third Court to vacate its injunction order. *Id.* at 392–94.

Kyle reads *Holmes* as saying that actions by the state which involve criminal law matters, per se, cannot be enjoined. Kyle's reading, however, is incorrect. The court in *Holmes* sought only to deny jurisdiction to civil courts who attempt to affect the mandate of the Court of Criminal Appeals. *See id.* at 396 n. 11 ("This opinion does *not* preclude [the Third Court of Appeals] from addressing the issues raised by the Board in appealing the order compelling a hearing on Graham's request for clemency. Nor does this opinion preclude Graham from continuing to seek civil review of the clemency process." (emphasis in original)); *see also Texas Board of Pardons and Paroles v. Graham,* 878 S.W.2d 684, 685 (Tex.App.—Austin 1994, no writ). There is no evidence in the record that Franklin's requested action by the 74th District Court would affect the mandate of the Court of Criminal Appeals. Accordingly, we conclude that Kyle's argument, that the 74th District Court did not have jurisdiction to consider the injunction sought by Franklin because it involved a criminal law matter, is without merit.

While the court in *Holmes* stated that Graham could continue to pursue civil review of the Board's clemency rules, we do not believe this rationale applies to the facts of the instant case. An analogy to a criminal defendant's efforts to bring a suit for declaratory judgment on the constitutionality of a criminal statute will make this distinction clear.

 In general, pretrial orders on the constitutionality of a criminal statute, whether it be substantive or procedural, are interlocutory and may not be appealed until a final judgment is rendered. *See* TEX. R.APP.P. 41(b)(1); *Woods v. State,* 532 S.W.2d 608, 610 (Tex.Crim.App.1976); *Petty v. State,* 800 S.W.2d 582, 583 (Tex.App.— Tyler 1990, no pet.). A criminal defendant may argue to the trial court before his trial date that he believes the procedural devices enacted by the state legislature violate his state or federal constitutional rights; however, if the trial court disagrees with him, he

must wait until he is convicted before he can appeal the trial court's ruling on the constitutionality of any relevant statutory provisions. We find little justification for granting an administrative releasee, such as Franklin, an injunction against the enforcement of a rule of the Board that will bear adversely upon him, when a criminal defendant, who is presumed innocent, is provided no similar mechanism for challenging by a suit for declaratory judgment the constitutionality of the criminal laws whose enforcement may result in his incarceration. *See Ex parte Williams,* 786 S.W.2d 781, 782 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd) (suits for declaratory judgment may not be brought in criminal cases); *see also Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (full panoply of rights afforded a criminal defendant are not provided to a parolee); *Passel,* 440 S.W.2d at 63 (unless a criminal statute is unconstitutional and its enforcement will cause irreparable injury to vested property rights, a person is required to wait until he is arrested to argue the constitutionality of the statute); *Morales v. State,* 801 S.W.2d 624, 625–26 (Tex.App.—Dallas 1990) (judgments from mental competency hearings in criminal cases are not directly appealable), *affirmed, Morales v. State,* 830 S.W.2d 139 (Tex.Crim.App.1992). If the criminal defendant loses his pretrial motion on the constitutionality of a criminal statute, he is compelled by our laws to wait, presuming he is convicted or pleads guilty or nolo contendere, for an opportunity to raise his constitutional questions on direct appeal, along with any other errors, constitutional or otherwise, that he might assert had been committed along the road to his incarceration. Accordingly, we hold that Franklin, like the criminal defendant contesting the constitutionality of the criminal laws whose enforcement prospectively will result in his incarceration, cannot receive declaratory relief from the 74th court on the constitutionality of the Board's rules which may result in his reincarceration.[2]

Because the 74th court had no authority to declare Franklin's rights under the Board's rules, we dismiss the appeal for want of jurisdiction. We will not consider his remaining points of error.

---

**2.** Like criminal defendants who challenge at trial the constitutionality of the criminal statutes whose enforcement threaten their liberty, Franklin is able to argue to the Board that the enforcement of its rules would violate his constitutional rights. *See Texas Educ. Agency v. Cypress–Fairbanks I.S.D.,* 830 S.W.2d 88, 90–91 (Tex.1992).