

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00090-CR

_____

ANTRON RAMMEL BLAYLOCK, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 13,170

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Antron Rammel Blaylock was indicted December 4, 2002, for the offense of delivering more than one but less than four grams of cocaine on or about April 16, 2002. He was also charged with having previously been convicted of two prior felony offenses. After a jury conviction and assessment of punishment, Blaylock was sentenced to sixty-five years' confinement April 12, 2005. The Texas Court of Criminal Appeals has authorized an out-of-time appeal. Blaylock raises four points of error: (1) improper evidence admitted over a *Crawford* objection; (2) denial of a speedy trial; (3) sufficiency of the evidence; and (4) improper sentence. We will affirm the judgment of the trial court.

## I. Background Facts

The State produced evidence to show that Blaylock sold cocaine to a non law enforcement agent, Karen Driggers, April 16, 2002, at a motel in Gilmer, Texas. A video camera had been installed in the room so that law enforcement officers in the adjacent room could observe the transaction. Officers Danny Butler and Bobby Joe Gibbons observed the transactions; their testimony was consistent with Driggers' testimony.

At trial, the State called the supervising chemist for the Texas Department of Public Safety laboratory in Tyler, Dennis Keith Pridgen, to testify about testing of the controlled substance. Pridgen had not personally conducted the tests of the substance; that was done by Ruben Rendon,

a chemist who no longer worked in the area. After reviewing the test results, Pridgen concluded the substance contained 2.98 grams of cocaine.

## II.     Did the expert testimony violate *Crawford*?

In testifying that the substance was cocaine, Pridgen reviewed and used test results of the substance conducted by another chemist.[1]  Blaylock objects that such evidence is a violation of *Crawford v. Washington*, 541 U.S. 36 (2004).

In *Crawford*, the United States Supreme Court held that the admission of a hearsay statement made by a nontestifying declarant violates the Sixth Amendment if the statement was testimonial when made and the defendant lacked a prior opportunity for cross-examination. *Id.* at 68.  Thus, a "testimonial" statement is inadmissible absent a showing that the declarant is presently unavailable and the defendant had a prior opportunity for cross-examination, even if the statement falls under a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness. *Id.* at 58–60, 68.  Although the *Crawford* opinion does not provide a comprehensive definition of "testimonial," it does indicate that the term covers ex parte in-court testimony or its functional equivalent,

---

[1]Evidence of the amount and weight of the substance determined by the laboratory was introduced without objection by Gibbons before Pridgen's testimony.  Gibbons testified that he weighed the substance and determined the weight as 4.1 grams.  He was then asked what the laboratory found the weight to be and responded, "Just a little under 3 grams, like 2.98 I believe what it was."  It is well established that questions regarding the admission of evidence are rendered moot if the same evidence is elsewhere introduced without objection; any error in admitting evidence over a proper objection is harmless if the same evidence is subsequently admitted without objection. *Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999).  Therefore, we will not address whether Pridgen's testimony as to the weight of the substance was admissible, but our analysis will be limited to his testimony that the substance was a controlled substance:  cocaine.

extrajudicial statements contained in formalized testimonial materials such as prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and police interrogations.

The proper standard of review on the issue before us is a hybrid one: both deferential and de novo. "Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, i.e., whether a statement is testimonial or non-testimonial, de novo." *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); *see also Lilly v. Virginia*, 527 U.S. 116, 136 (1999) (stating courts should independently review whether out-of-court statements violate the Confrontation Clause). De novo review is appropriate because the legal ruling of whether a statement is testimonial under *Crawford* is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant. *Wall*, 184 S.W.3d at 742–43. "On that question trial judges are no better equipped than are appellate judges, and the ruling itself does not depend upon demeanor, credibility, or other criteria peculiar to personal observation." *Id.* at 743; *Dixon v. State*, 244 S.W.3d 472 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

The rationale for allowing an expert witness to express an opinion is that the witness has specialized education, training, and experience to survey information and form conclusions based on studies, tests, experiments, and facts. For instance, medical doctors rely on tests made by others such as reports regarding blood tests, vital signs, X-rays, MRI examinations, CT scans, and a myriad of other information, including patient-subjective complaints. The technicians who drew the blood, applied the blood pressure cuff, or conducted the X-ray examination are not required to testify in

person because their test results are simply used by the expert to arrive at a diagnosis of an illness or injury. The data from these tests is normally relied on by the expert and without which the expert could not properly derive such conclusions. The evidence that is ultimately admitted is the testimony of the expert witness who is available for cross-examination as to his or her opinions. The Texas Rules of Evidence recognize this and allow an expert, in forming an opinion, to consider information, even if it is not legally admissible evidence, if it is a type reasonably relied on by experts in the field. *See* TEX. R. EVID. 703. The Texas Court of Criminal Appeals has approved the admission of expert testimony based on test results that another has conducted. *See Martinez v. State*, 22 S.W.3d 504 (Tex. Crim. App. 2000); *Aguilar v. State*, 887 S.W.2d 27 (Tex. Crim. App. 1994). These cases primarily dealt with the rules of evidence rather than confrontation issues and were decided before *Crawford*.

Blaylock urges that *Crawford* alters that ordinary understanding of an expert witness' testimony and that his right of confrontation was denied by being unable to cross-examine Rendon, rather than Pridgen. The parties stipulated that Pridgen was an expert in the field of chemistry. Pridgen testified about the type of tests that are used to determine the composition of a substance, the instruments used (infrared spectroscopy and gas chromatography mass spectroscopy), the laboratory method of assuring a chain of custody of the evidence, and the specific tests done on this substance (colorimetric tests—marquis and carbothiocyanate). In response to cross-examination, Pridgen gave a detailed scientific explanation of the procedure for extracting the identifiable

5

components of the substance examined, a procedure he stated was "a definitive test for cocaine." He explained that his testimony was not based simply on "reading notes" of the examiner, but by "looking at the printed results from the instruments." This testimony demonstrates that Pridgen was applying his expertise to the scientific data in arriving at his opinion. Based on this explanation, we believe that this testimony was the expert opinion of Pridgen based on definitive tests done on the substance and was not merely a recitation of the notes of the chemist who actually did the test. Pridgen was cross-examined by the defense.

Blaylock cites the case of *Deener v. State*, 214 S.W.3d 522 (Tex. App.—Dallas 2006, pet. ref'd). In *Deener*, the State sought to introduce the certificates of analysis of physical evidence and chain of custody affidavits at trial. *See* TEX. CODE CRIM. PROC. ANN. art. 38.41 (Vernon 2005). Deener objected at his second trial (the first ended in a hung jury mistrial). The Dallas Court of Appeals held that such affidavits were testimonial evidence and barred by *Crawford*, but Deener had failed to object to the affidavits at least ten days before trial as required by statute and thereby forfeited the objection. The distinction between *Deener* and this case is that, in *Deener*, no witness, expert or otherwise, was available for cross-examination and the State attempted to introduce affidavits from witnesses who were not present. So the evidence was (1) made by an absent declarant and (2) testimonial in nature. Here, the evidence was the expert testimony of Pridgen; the State did not attempt to introduce any certificate of analysis, affidavit, or laboratory test report concerning the substance analysis. This evidence was not merely the out-of-court statements from

6

an absent declarant; instead, it was the expert opinion of an in-court witness who, in arriving at his conclusions, had reviewed the scientific test results conducted by another chemist. *Deener* does not support the conclusion Blaylock proposes.

Other than the *Deener* case, the parties furnished no other authority that addresses the issue before this Court. But, other courts have dealt with these *Crawford* issues. The Seventh Circuit Appeals Court of the United States faced a very similar matter in *United States v. Moon*, 512 F.3d 359 (7th Cir. 2008). In *Moon*, James DeFrancesco, a chemist employed by the Drug Enforcement Agency, testified that the substance was cocaine. The actual laboratory work was done by another chemist, Ragnar Olson, who had left federal employment. Over a confrontation objection, DeFrancesco testified about the machines used, the instruments' output, and Olson's laboratory notes. Even though the court was reviewing the evidence based on a "plain error" standard, the Seventh Circuit found "no problem with DeFrancesco's testimony." The court suggested the notes of Olson would be inadmissible if the proper objection was made, but the "Sixth Amendment does not demand that a chemist or other testifying expert have done the lab work himself." *Id.* at 362.

Other courts, considering *Crawford* confrontation objections, have come to a similar conclusion. *See, e.g.*, *State v. Delaney*, 613 S.E.2d 699 (N.C. Ct. App. 2005) (chemist testified from another's report); *State v. Barton*, 709 N.W.2d 93, 97 (Wis. Ct. App. 2005) (expert satisfied confrontation right because the expert "formed his opinion based on his own expertise and his own

7

analysis of the scientific testing. He then presented his conclusions to the jury, and he was available . . . for cross-examination.").

This case does not involve one expert merely reading to the jury a report conducted by another. Neither is it like *Deener*, where affidavits of a nonappearing expert are sought to be introduced. The testimony of this expert witness concerning the chemical analysis of the substance, determined by applying his expertise to reliable scientific test data, was admissible as he was subject to cross-examination. We believe this fulfills the requirement of the Confrontation Clause.

## III. Speedy Trial

Blaylock argues he was denied his constitutional right to a speedy trial. The Sixth Amendment to the United States Constitution guarantees the accused's right to a speedy trial. *Zamorano v. State*, 84 S.W.3d 643, 647 & n.5 (Tex. Crim. App. 2002). In addition, Article I, Section 10 of the Texas Constitution guarantees the accused in all criminal prosecutions the right to a speedy and public trial. *Id.* at 647 & n.6; *see* TEX. CONST. art. I, § 10.

In reviewing a trial court's decision on a speedy trial motion, we review the trial court's determination of the historical facts under an abuse of discretion standard and conduct a de novo review of the legal components by independently engaging in the balancing test set out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005); *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). *Barker* requires that we balance the following four factors: (1) length of the delay; (2) reasons for the delay; (3) defendant's assertion

8

of the speedy trial right; and (4) prejudice to the defendant resulting from the delay. *Barker*, 407 U.S. at 530; *Kelly*, 163 S.W.3d at 726. In conducting the balancing test, no single factor is determinative, and the conduct of both the prosecutor and the defendant are to be weighed. *See Barker*, 407 U.S. at 530, 533; *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

### A. Length of the Delay

We measure the delay from the defendant's arrest or formal accusation. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). The evidence shows that the indictment was issued December 4, 2002. The trial was conducted April 11, 2005, resulting in a delay of approximately twenty-nine months. Texas courts have generally held that a delay of eight months or more is "presumptively prejudicial" and will trigger a speedy trial analysis. *See Zamorano*, 84 S.W.3d at 649 (citing *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992)). "Presumptive prejudice" does not "necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Munoz*, 991 S.W.2d at 822 (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). This delay is sufficient to trigger a speedy trial analysis under *Barker*.

### B. Reasons for the Delay

A short hearing was conducted on Blaylock's motion to dismiss for lack of a speedy trial. At that hearing, the State presented one witness; Blaylock presented no evidence. The only witness, Patty Kennimer, testified that she is a parole officer for the State of Texas and was the supervising

9

parole officer for Blaylock. She further testified that Blaylock had an appointment with her on January 3, 2003, but failed to appear. Kennimer attempted to locate Blaylock by calling his uncle, Curtis Blaylock, who advised her that Blaylock had moved two or three weeks previously. Kennimer sent a letter to Blaylock advising him that he must report on January 9, 2003, which he failed to do. She then called the local county jail, both hospitals, and checked his criminal history in an effort to determine his whereabouts. After these actions proved to be unfruitful, Kennimer reported that Blaylock was an absconding parolee and requested that a blue warrant be issued for his arrest.[2] During the trial, Gibbons testified that attempts to locate Blaylock included placing his identifying information in the TCIC and NCIC[3] computer systems which would alert officers making a traffic stop or arrest that he was wanted. The record shows that a capias was issued for Blaylock December 4, 2002, and he was served in the Smith County, Texas, jail with the capias and copy of the indictment November 15, 2004. There is no explanation in the record as to where Blaylock was from January 2003 until November 2004.

The record before the trial court and this Court shows that Blaylock absconded from supervision from parole in January 2003. His presence thereafter is unaccounted for until November 2004 when he was served with the indictment while incarcerated in the Smith County, Texas, jail.

---

[2]A "blue warrant" is an arrest warrant issued when a parolee is suspected of violating the conditions of his or her parole. *See Franklin v. Kyle*, 899 S.W.2d 405, 406 n.1 (Tex. App.—Waco 1995, no pet.); *see also* TEX. GOV'T CODE ANN. § 508.252 (Vernon 2004).

[3]The Texas Crime Index Center and National Crime Index Center.

Once it has been determined that a presumptively prejudicial delay has occurred, the State bears the initial burden of providing a justification for the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994); *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.—San Antonio 1998, no pet.). Different reasons for the delay are assigned different weights: an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts, is weighed less heavily against the State; a valid reason is not weighed against the State at all; and delay attributable to the defendant may constitute a waiver of the speedy trial claim. *Munoz*, 991 S.W.2d at 822.

Here, the State offered evidence to explain that Blaylock absconded from parole supervision immediately after the indictment was issued. Agents of the State made efforts to locate Blaylock, to no avail. No contradicting evidence was presented. This is a valid reason for the delay, or in some circumstances a waiver of the speedy trial claim. The evidence presented on the reasons for the delay weigh heavily against a finding of a violation of the speedy trial right.

### C.     Assertion of the Right

The third *Barker* factor requires a determination of whether the defendant asserted his or her right to a speedy trial. *Barker*, 407 U.S. at 532; *see also Munoz*, 991 S.W.2d at 825 (placing burden on defendant to assert or demand right to speedy trial). The defendant's assertion of that right is entitled to strong evidentiary weight when determining whether the defendant was deprived of his or her right to a speedy trial. *Barker*, 407 U.S. at 531–32; *Zamorano*, 84 S.W.3d at 651. Although

11

the defendant's failure to timely seek a speedy trial does not amount to a waiver of the right, such failure makes it difficult for a defendant to prevail on a speedy trial claim. *See Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (citing *Barker*, 407 U.S. at 532).

Counsel was appointed for Blaylock November 18, 2004, after he was in custody and had been served with process. On January 11, 2005, a motion for speedy trial and to set aside the indictment for lack of a speedy trial was filed by Blaylock. The trial court set the case during a two-week period beginning February 14, 2005. A pretrial hearing on the speedy trial motions was heard February 2, 2005, and after evidence was presented, the trial court took the issue under advisement. On February 25, 2005, the trial court notified the parties that it was denying the motion to set aside the indictment, gave the case priority, and set the trial for April 2005. The trial began April 11, 2005. We find that, under these facts, Blaylock properly asserted his right to a speedy trial and was granted a trial promptly thereafter. Overall, this factor would weigh moderately in his favor.

### D.     Prejudice

The final factor is prejudice to the defendant, which should be assessed in light of the interests of the defendant that the right to a speedy trial was designed to protect. *Barker*, 407 U.S. at 532; *Munoz*, 991 S.W.2d at 826. These interests are: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Munoz*, 991 S.W.2d at 826. Of these interests, the most important is protecting a defendant's ability to adequately prepare his or her case

12

because compromise of this interest "skews the fairness of the entire system." *Munoz*, 991 S.W.2d at 826 (quoting *Barker*, 407 U.S. at 532–33).  The defendant has the burden to make some showing of prejudice, although a showing of actual prejudice is not required.  *Id.*  When the defendant makes a prima facie showing of prejudice, the burden shifts to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id.* (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

The record indicates that Blaylock was incarcerated from November 13, 2004 until trial, as he was given credit for his time served in jail beginning from that date until the date of the judgment. This resulted in an approximate five-month pretrial incarceration, which cannot be considered as oppressive, but is no more than ordinary and inevitable delay.  No evidence was presented as to any anxiety or concern of the accused.  Most importantly, no evidence was presented that Blaylock's defense was impaired or hampered by the delay.  The trial consisted of evidence of a single episode of delivery of a controlled substance involving one undercover witness and two law enforcement officers watching the transaction in an adjoining room by video, which was played for the jury. Blaylock does not designate any evidence in the record demonstrating prejudice and only urges that "Appellant had no duty to make an actual showing of prejudice, he alleged and argued that such a delay would greatly affect his memory and ability to assist in preparation of trial and to remember other facts and the identity and location of witnesses."  While these matters are alleged in the motion, Blaylock did not present any such evidence and there is no evidence supporting these allegations in

13

the record. We find no evidence of any harm or prejudice to Blaylock resulting from the delay. Overall, we find this factor does not weigh toward finding a violation of Blaylock's speedy trial right.

**E.      Balancing of the Four Factors**

The length of the delay was sufficient to require an investigation of the other factors and so weighs moderately against the State. The only reason provided in the evidence for the delay is that Blaylock absconded from supervision from his parole officer. She attempted to locate him through family, jails, and hospitals. He failed to appear in January 2003 for reports with the parole officer. Law enforcement officials placed his name on the state and federal crime information indices, which buttresses the claim that he was an absconder. Based on this evidence, we find this factor weighs heavily against a finding that Blaylock's speedy trial right was violated. Blaylock did assert his right shortly after he was served with the indictment in the case; this factor would weigh moderately in his favor. In this matter, Blaylock has shown no prejudice associated with the delay. Although a showing of "actual prejudice" is not required in Texas, the burden is on the accused to make some showing of prejudice which was caused by the delay of his or her trial. *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973) (citing *Courtney v. State*, 472 S.W.2d 151 (Tex. Crim. App. 1971)). This factor weighs heavily against finding a violation of Blaylock's speedy trial right. After considering all factors involved, we conclude Blaylock was not denied his constitutional right to a speedy trial.

14

## IV.     Insufficiency of the Evidence

Blaylock argues "[s]ince the testimony of the Chemist Pridgen was erroneously admitted into evidence and since the evidence concerning the identity, amount and analysis of the subject substance should be omitted as evidence, the evidence is otherwise insufficient to sustain the verdict of the jury."[4]  This issue is conditioned on a finding that Pridgen's testimony was inadmissible and therefore cannot be considered by this Court.  Since we have found Pridgen's testimony to be admissible, the condition on which this point of error is premised is not established.  Blaylock does not argue that the evidence is insufficient if Pridgen's testimony is considered.  Without repeating the evidence previously recited, including Pridgen's testimony, we find the evidence is both factually and legally sufficient to sustain the jury verdict.  Therefore, this point of error is overruled.

---

[4]We review the legal sufficiency of the evidence considering all the evidence in the light most favorable to the verdict—could a rational jury have found the essential elements of delivery of a controlled substance (cocaine) in an amount of more than one but less than four grams, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

When reviewing the evidence for factual sufficiency, we review all the evidence admitted at trial in a neutral light.  The evidence supporting a jury's verdict may be factually insufficient if the evidence supporting the jury's verdict is so weak that the jury's judgment appears clearly wrong or manifestly unjust or if the evidence supporting the judgment of conviction is outweighed by the great weight and preponderance of the evidence. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *McDowell v. State*, 235 S.W.3d 294, 296 (Tex. App.—Texarkana 2007, no pet.).  This factual sufficiency standard requires that we reach "a high level of skepticism" before we may reverse a jury's verdict based on factual insufficiency. *Roberts*, 220 S.W.3d at 524.

## V. Improper Sentence

In his final point, Blaylock argues that the judgment fails to show the trial court had the authority to enter a sentence in excess of twenty years' confinement. This argument originates from language contained in the judgment indicating that the offense was a second-degree felony with a punishment range from two to twenty years' confinement and a maximum fine of $10,000.00.

The indictment charged Blaylock with delivery of more than one gram but less than four grams of a controlled substance: cocaine, which is a second-degree felony. TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 2003). Additionally, the indictment alleged that Blaylock had previously been convicted of two felony offenses. Blaylock pled "true" to the enhancement allegations, and the jury found that Blaylock had finally and sequentially been previously found guilty of both prior felonies as alleged. Therefore, the range of punishment was elevated to imprisonment for life, or for any term of not more than ninety-nine years or less than twenty-five years. TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2007). The jury assessed punishment at sixty-five years' confinement. The judgment expressly states that Blaylock entered a plea of "true" to the enhancement and that a finding of "true" was made to the enhancement allegation. The only omission from the judgment form is the information provided regarding "Applicable punishment range (including enhancement, if any)." The information given was "Second Degree 2-20 yrs in prison/max $10,000 fine."

16

This Court has the authority to reform the judgment to make the record speak the truth when the matter has been called to our attention by any source. *French v. State*, 830 S.W.2d 607 (Tex. Crim. App. 1992). In *Asberry v. State*, 813 S.W.2d 526 (Tex. App.—Dallas 1991, pet ref'd), the court noted that the authority of the appellate court to reform incorrect judgments is not dependent on request of any party; the appellate court may act sua sponte. The Texas Rules of Appellate Procedure provide direct authority for this Court to modify the judgment of the trial court. TEX. R. APP. P. 43.2.

We will modify the judgment to reflect the correct range of punishment as follows: "Imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years." *See* TEX. R. APP. P. 43.2(b).

The trial court properly sentenced Blaylock to sixty-five years' confinement as assessed by the jury.

As modified, we affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:    February 28, 2008
Date Decided:      May 14, 2008

Publish