**AFFIRM; and Opinion Filed January 21, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00204-CR

### JIMMY ALBERT JOHNSON, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 59th Judicial District Court
Grayson County, Texas
Trial Court Cause No. 044441**

## OPINION

Before Chief Justice Wright, Justice Bridges, and Justice Fillmore
Opinion by Justice Fillmore

Jimmy Albert Johnson appeals the trial court's denial of his motion to dismiss for violation of his right to a speedy trial. We affirm the trial court's judgment.

### Procedural History

Johnson was arrested on May 8, 1997[1] and charged with aggravated sexual assault of M.W., the fourteen-year-old daughter of Johnson's girlfriend. M.W. was pregnant and had reported Johnson was the father of the child. Jason Butscher was appointed to represent Johnson. Johnson posted a $5,000 bond on May 23, 1997 and was released from jail. On June 4,

---

[1] The record is not clear as to the date of Johnson's arrest. Johnson relies on an order of the justice of the peace court setting conditions of bail to argue he was arrested on November 15, 1996. The State relies on the trial court's docket sheet to contend Johnson was arrested on May 16, 1997. However, the trial court's judgment gives Johnson credit for an incarceration period beginning May 8, 1997. Although we have relied on the May 8, 1997 date in this opinion, we note the analysis would not change if Johnson was arrested on November 15, 1996.

1997, Johnson was indicted for aggravated sexual assault of a child. The trial court subsequently placed the case on the July 31, 1997 "first setting" docket.

Jack McGowen was appointed to represent Johnson on July 7, 1997.[2] The State forwarded "all discoverable material in the County Attorney's file" to McGowen on July 14, 1997. At the first setting on July 31, 1997, Johnson pleaded not guilty to the charge and the case was reset for announcements on August 28, 1997. Both Johnson and McGowen signed the "Notice of Agreed Setting."

On August 28, 1997, the case was reset for announcements on September 18, 1997. McGowen, but not Johnson, signed the "Notice of Agreed Setting." A handwritten note on the notice states "need plea offer." On September 18, 1997, the case was reset for announcements on October 23, 1997. Again, McGowen, but not Johnson, signed the "Notice of Agreed Setting."

A-American Bail Bond Company, the surety on Johnson's bail bond, filed a motion on September 29, 1997 seeking to be released from the bond because Johnson had failed to pay the bond fee, failed to keep A-American apprised of his whereabouts, and otherwise failed to abide by the bonding agreement. A-American represented that Johnson's last known address was in Houston, Texas and requested a warrant be issued for Johnson's arrest. The trial court issued the capias on October 1, 1997, and Johnson was arrested on January 30, 1998.

The trial court signed a scheduling order on February 9, 1998, setting the case for a pretrial hearing on March 5, 1998 and for trial on April 6, 1998. On February 20, 1998, Johnson posted a $5,000 bond and was released from jail. The record does not reflect why the case was not tried on April 6, 1998 but, on June 3, 1998, the trial court signed a scheduling order setting the case for a pretrial hearing on July 2, 1998 and for trial on August 3, 1998.

---

[2] Johnson testified during the punishment phase that he was told Butscher had accepted employment with the FBI and could no longer represent him.

City Hall Bail Bonds, the surety on Johnson's second bail bond, filed an affidavit to surrender principal on June 10, 1998. The affidavit stated Johnson had failed to make contact on an agreed date to pay the bond or on any date for the requested "call in time" and had failed to respond to City Hall's attempts to contact him. City Hall represented that Johnson's last known address was in Houston and requested a warrant be issued for his arrest. The trial court issued a capias that day, and Johnson was arrested on April 26, 2001. On May 5, 2001, Johnson again posted a $5,000 bond and was released from jail. The trial court signed a scheduling order on June 6, 2001 setting the case for a pretrial hearing on July 12, 2001 and for trial on August 27, 2001.

On July 25, 2001, Johnson wrote a letter to the trial court complaining about McGowen and requesting new counsel. McGowen filed a motion to withdraw from the representation on August 15, 2001. On August 27, 2001, the trial court granted McGowen's motion, appointed Butscher to again represent Johnson, and set the case for trial on October 1, 2001. Although the record does not reflect why the case was not tried on October 1, 2001, on December 12, 2001, the case was set for trial on February 25, 2002.

Butscher filed a number of motions and an election of punishment prior to the trial setting. However, Johnson did not appear for trial on February 25, 2002. On May 14, 2002, Liberty Bail Bonds, the surety on Johnson's third bail bond, filed a motion to be released from the bond because Johnson had failed to keep Liberty apprised of his whereabouts and had failed to otherwise abide by the bonding agreement. Liberty represented that Johnson's last known address was in North Carolina and requested that a warrant be issued for his arrest. On May 14, 2002, the trial court issued a capias for Johnson's arrest. In a June 7, 2002 scheduling order, the trial court set the case for trial on July 29, 2002.

The case was next set on the July 13, 2006 plea docket. However, the notice of the setting mailed to Johnson in North Carolina was returned as undelivered by the postal service because there was "no such number/street." Johnson did not appear at the July 13, 2006 plea docket. On July 21, 2006, the trial court issued a capias for Johnson's arrest. Johnson was arrested on February 15, 2012 and, on February 21, 2012, Mike Dunn was appointed to represent him.

The State filed a motion for high bond, citing to Johnson's repeated failures to appear in court. On March 8, 2012, the trial court granted the motion and set Johnson's bond at $150,000. The trial court also appointed Joe Neal Smith to represent Johnson. The case was set for arraignment on March 22, 2012. At the arraignment, both Johnson and his counsel signed a "Notice of Agreed Setting" placing the case on the April 26, 2012 plea docket.[3] On April 26, 2012, both Johnson and his counsel signed another "Notice of Agreed Setting" resetting the case for the May 24, 2012 plea docket.

Johnson wrote a letter to the trial court on July 3, 2012 requesting that he be allowed to fire Smith. A note on the letter states "Def. has an atty. Should be filed through atty." On August 22, 2012, Johnson filed a *pro se* motion for speedy trial. On October 3, 2012, Johnson wrote to Smith stating that Smith was fired and that Johnson no longer wanted Smith to represent him.

M.W.'s child, A.W., died in an automobile accident in 2000. The State obtained A.W.'s toothbrush and clothes from M.W. and, on November 13, 2012, submitted the items, along with DNA samples from Johnson, to a lab for testing. The lab was unable to obtain a DNA sample for A.W. from the items and, on March 20, 2013, the State obtained a subpoena to exhume A.W.'s body to obtain samples of her DNA. A.W.'s body was exhumed on March 21, 2013.

---

[3] Johnson disputes that he actually agreed to reset the case.

Also on March 21, 2013, the trial court granted Smith's March 5, 2013 motion to withdraw and appointed Robert Earl Richardson, Jr. to represent Johnson. On May 9, 2013, the lab issued a forensic DNA report stating Johnson could not be excluded as A.W.'s father and that at least 99.995% of the male population was excluded from the possibility of being A.W.'s father.

On May 28, 2013, Johnson wrote a letter to the trial court requesting that his case move forward. The trial court set the case on the June 20, 2013 plea docket. On June 20, 2013, Johnson's counsel signed a "Notice of Agreed Setting," placing the case on the June 27, 2013 plea docket. On June 27, 2013, the case was set for trial on December 16, 2013.

Johnson, through his counsel, filed a motion to dismiss on November 12, 2013 based on a violation of his right to a speedy trial. In support of the motion, Johnson requested the trial court take judicial notice of the entire file and attached a register of the actions taken in the case, Johnson's *pro se* motion for speedy trial filed in August 2012, portions of an investigative report relating to exhuming A.W.'s body, and the forensic DNA report. Without conducting a hearing, the trial court denied the motion on December 11, 2013. Johnson pleaded guilty on December 16, 2013, and the trial court subsequently sentenced him to forty years' imprisonment. The trial court certified that Johnson had the right to appeal the denial of the motion to dismiss.

### Analysis

Focusing on the time period between his February 15, 2012 arrest and December 16, 2013 plea, Johnson argues the trial court erred by denying his motion to dismiss based on a violation of his right to a speedy trial. The Sixth Amendment of the United States Constitution, made applicable to the States through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. CONST. VI; *see also Klopfer v. North Carolina*, 386 U.S. 213, 222–23 (1967); *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). Courts determine a speedy trial claim on an "ad hoc basis" by

–5–

analyzing and weighing four factors:  (1) the length of the delay, (2) the State's reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Gonzales*, 435 S.W.3d at 808.  The State has the burden of justifying the length of the delay, while the defendant has the burden of proving the assertion of the right and showing prejudice.  *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).  The defendant's burden on the latter two factors "varies inversely" with the State's degree of culpability for the delay.  *Id.*  "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial."  *Id.* at 280–81.  In conducting the balancing test, no single factor is determinative, and the conduct of both the prosecutor and the defendant must be weighed.  *Barker*, 407 U.S. at 530, 533; *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999).

To trigger a speedy trial analysis, the defendant must make an initial showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  *Gonzales*, 435 S.W.3d at 808 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)).  Presumptive prejudice "simply marks the point at which courts deem the delay unreasonable enough to trigger [further] enquiry."  *Id.* (quoting *Munoz*, 991 S.W.2d at 821–22).  If the State prosecuted the defendant with "customary promptness," the defendant has failed to meet the threshold burden.  *Id.*  If the defendant can make a threshold showing of presumptive prejudice, a court must then proceed to consider and weigh each of the remaining *Barker* factors.  *Id.* (citing *Munoz*, 991 S.W.2d at 821–22); *see also State v. Jones*, 168 S.W.3d 339, 347 (Tex. App.—Dallas 2005, pet. ref'd) (unless delay is "presumptively prejudicial," courts need not inquire into other *Barker* factors).

If the right to a speedy trial has been violated, the remedy is dismissal of the charging instrument with prejudice. *Cantu*, 253 S.W.3d at 281. Because this is a radical remedy, "courts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Id.* "The constitutional right is that of a speedy trial, not dismissal of the charges." *Id.*

In reviewing the trial court's ruling on a speedy trial claim, we apply a bifurcated standard of review. *Gonzales*, 435 S.W.3d at 808. We give almost total deference to historical findings of fact of the trial court that the record supports and draw reasonable inferences from those facts necessary to support the trial court's findings. *Id.* at 808–09. As legal questions, we review de novo whether there was sufficient presumptive prejudice to proceed to a *Barker* analysis and the weighing of the *Barker* factors. *Id.* at 809. We do not consider evidence that was not before the trial court when it made its ruling. *Id.* at 809. Because the trial court denied Johnson's motion to dismiss, we must presume the trial court resolved any disputed fact issues in the State's favor, and we must defer to the implied fact findings that the record supports. *Cantu*, 253 S.W.3d at 282 (citing *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002)). We must uphold the trial court's ruling if it is supported by the record and is correct under the applicable law. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

### Length of the Delay

The first *Barker* factor, length of the delay, is measured from the time the accused is arrested or formally accused. *Gonzalez*, 439 S.W.3d at 809 (citing *United States v. Marion*, 404 U.S. 307, 313 (1971)). Johnson was first arrested on May 8, 1997 and pleaded guilty on December 16, 2013, resulting in a delay of over sixteen years. Although there is no "set time element," in general, delay approaching one year is sufficient to trigger a speedy trial inquiry.

*Cantu*, 253 S.W.3d at 281; *Shaw*, 117 S.W.3d at 889. The delay in this case is sufficient to trigger analysis of the other the *Barker* factors. *See Zamorano*, 84 S.W.3d at 649 (four year delay between arrest and plea hearing clearly triggered analysis of other *Barker* factors).

When, as in this case, the length of delay stretches well beyond the bare minimum needed to trigger a full *Barker* analysis, the length of the delay weighs heavily against the State. *Shaw*, 117 S.W.3d at 889; *Zamorano*, 84 S.W.3d at 649. Further, because "the presumption that pretrial delay has prejudiced the accused intensifies over time," the longer the delay, the more the defendant's prejudice is compounded. *Gonzales*, 435 S.W.3d at 809 (quoting *Zamorano*, 84 S.W.3d at 649); *see also Doggett*, 505 U.S. at 652. Accordingly, this factor weighs heavily in favor of finding a speedy trial violation.

### *Reason for the Delay*

With respect to the second *Barker* factor, the reason for the delay, once it has been determined that a presumptively prejudicial delay has occurred, the State bears the initial burden of providing a justification for the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994). Different reasons for the delay are assigned different weights: an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts or negligence, is weighed less heavily against the State; a valid reason is not weighed against the State at all; and delay attributable in whole or in part to the defendant may constitute a waiver of the speedy trial claim. *Munoz*, 991 S.W.2d at 822 (citing *Barker*, 407 U.S. at 528–30 and *Dickey v. Florida*, 398 U.S. 30, 48 (1970) (Brennan, J., concurring)).

In this case, the delay from May 8, 1997 through February 15, 2012 was largely attributable to Johnson. *See Cockrell v. State*, 632 S.W.2d 664, 666 (Tex. App.—Fort Worth 1982, pet. ref'd) (defendant not entitled to dismissal of case based on delays in which was a willing participant). He agreed to reset the case three times, requested to be allowed to fire his

attorney shortly before a trial setting on August 27, 2001, failed to appear at a trial setting on February 25, 2002, and absconded three times for a total time of over fourteen years. Ignoring this conduct, Johnson relies on the delay between his arrest on February 15, 2012 and his guilty plea on December 16, 2103 to argue his right to a speedy trial was violated. Although much of this almost two-year delay was unexplained, the record reflects that, during this time period, the case was set for arraignment or on a plea docket five times. *See Munoz*, 991 S.W.2d at 824 (delay caused by good faith plea negotiation should not be weighed against State). Further, during that time period, the State, after unsuccessfully attempting to obtain a DNA sample from A.W.'s toothbrush and clothes, obtained a search warrant, exhumed A.W.'s body in order to obtain a DNA sample, and conducted forensic testing on those samples and samples of Johnson's DNA. *See Shaw*, 117 S.W.3d at 889–90 (reasonable period of time in which to develop its case is not held against State). There is, however, no explanation in the record of why this process was not started earlier or why it took so long. Although the unexplained time gaps in the almost two-year delay following Johnson's final arrest weighs against the State, we cannot conclude they excuse Johnson's conduct during the previous fifteen years the case was pending. *See Burton v. State*, 805 S.W.2d 564, 572, 574 (Tex. App.—Dallas 1991, pet. ref'd) (weighing unexplained eight-month period of delay against State, but not finding it dispositive of speedy trial claim when defendant absconded for four years). Considering all the reasons for delay in this case, we conclude they weigh against a finding of a violation of Johnson's right to a speedy trial. *See Blaylock v. State*, 259 S.W.3d 202, 209–10 (Tex. App.—Texarkana 2008, pet. ref'd) (delay due to defendant absconding from supervision "is a valid reason for the delay, or in some circumstances a waiver of the speedy trial claim"); *Burgett v. State*, 865 S.W.2d 594, 597 (Tex. App.—Fort Worth 1993, pet. ref'd) (denying speedy trial claim when defendant evaded justice

for nearly five years even though State took six months to bring case to trial after re-arresting defendant) (citing *Dickey*, 398 U.S. at 48 (Brennan, J., concurring)).

*Assertion of the Right*

Regarding the third *Barker* factor, the defendant bears the responsibility to assert his right to a speedy trial. *Cantu*, 253 S.W.3d at 282. Whether and how a defendant chooses to assert his right "is closely related to the other three factors because the strength of his efforts will be shaped by them." *Id.* at 282–83. "The more serious the deprivation, the more likely a defendant is to complain." *Id.* at 283 (quoting *Barker*, 407 U.S. at 531); *see also Shaw*, 117 S.W.3d 890 (noting that the longer delay becomes, the more likely it is that defendant who really wanted speedy trial would take some action to obtain one). The defendant's assertion of his right to a speedy trial, or the failure to assert the right, "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Cantu*, 253 S.W.3d at 282.

A defendant's failure to timely seek a speedy trial does not amount to a waiver of the right. *Shaw*, 117 S.W.3d at 890 (citing *Barker*, 407 U.S. at 532). However, a defendant's failure to timely demand a speedy trial makes it difficult for the defendant to prevail on a speedy trial claim because the failure to timely demand a speedy trial indicates strongly that he did not really want a speedy trial and was not prejudiced by not having one. *Shaw*, 117 S.W.3d at 890; *see also Barker*, 407 U.S. at 536 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates . . . that the defendant did not want a speedy trial."); *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992) ("[A]ppellant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial."). The longer the delay becomes, the more heavily a defendant's inaction weighs against him. *Shaw*, 117 S.W.3d at 890. Further, this

*Barker* factor is weighed against a defendant who knew of an indictment and fled the jurisdiction to avoid prosecution. *See Doggett*, 505 U.S. at 653; *Burgett*, 865 S.W.2d at 598.

Johnson absconded three different times throughout the course of this case and was absent for a total of over fourteen years. He also delayed the trial of this case by agreeing to have the case reset a number of times, successfully seeking to fire his attorney shortly before a trial setting on August 27, 2001, and failing to appear at a trial setting on February 25, 2002. He did not assert a right to a speedy trial until over sixteen years after his initial arrest. At that point, he sought the dismissal of the claims against him, not a trial.[4] *See Cantu*, 253 S.W.3d at 283 ("Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one."). The case went to trial one month after Johnson filed his motion to dismiss. *See Kelly v. State*, 163 S.W.3d 722, 729 (Tex. Crim. App. 2005) (third factor did not weigh in defendant's favor when defendant waited over a year to file a motion to dismiss based on failure to receive speedy trial, made assertion only once, and trial occurred within two months of motion being filed). Johnson's conduct throughout this case indicates he did not really want this case to proceed to trial. *See Shaw*, 117 S.W.3d at 890. This factor weighs heavily in the State's favor.

*Prejudice*

We finally turn to the fourth *Barker* factor, the prejudice to Johnson from the delay. "Because 'pretrial delay is often both inevitable and wholly justifiable,'" this factor "examines whether and to what extent the delay has prejudiced the defendant." *Cantu*, 253 S.W.3d at 285 (quoting *Doggett*, 505 U.S. at 656). The prejudice must be assessed in light of the interests that the speedy trial right is designed to protect: (1) preventing oppressive pretrial incarceration, (2)

---

[4] Although Johnson filed a *pro se* motion for speedy trial in August 2012, he was represented by an attorney, and the trial court was free to disregard that motion. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) (because defendant has no right to hybrid representation, trial court is free to disregard any *pro se* motion presented by defendant who is represented by counsel).

minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Id.*; *see also Barker*, 407 U.S. at 532). Of these three interests, the possibility the defense will be impaired by dimming memories and the loss of exculpatory evidence is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532; *see also Doggett*, 505 U.S. at 654; *Gonzales*, 435 S.W.3d at 812.

Affirmative evidence of particularized prejudice is not essential to every speedy trial claim because excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify. *Doggett*, 505 U.S. at 655; *Gonzales*, 453 S.W.3d at 812. Further, the presumption of prejudice intensifies over time. *Doggett*, 505 U.S. at 656. However, the presumption of prejudice to the defendant's ability to defend himself can be "extenuated . . . by the defendant's acquiescence" in the delay. *Id.* at 658; *see also Gonzales*, 435 S.W.3d at 815.

In this case, prior to his final arrest in February 2012, Johnson was incarcerated on three occasions for a total time of approximately six weeks. After each of his first three arrests, Johnson was released after posting a $5,000 bond. After his arrest in February 2012, Johnson was held on a $150,000 bond because he had repeatedly absconded when released on a lower bond. Johnson failed to post the required bond and was incarcerated until he pleaded guilty on December 16, 2013. However, Johnson presented no evidence in connection with his motion to dismiss that the incarceration beginning in 2012 caused him any unusual anxiety or concern beyond the level normally associated with being charged with aggravated sexual assault of a child. *See Cantu*, 253 S.W.3d at 286.

Most importantly, Johnson presented no evidence in connection with the motion to dismiss that his defense was impaired or hampered due to the loss of exculpatory evidence or

–12–

dimming memories during the delay. Rather, Johnson contends he was prejudiced because, before the State obtained the DNA test results, its case was based solely on M.W.'s testimony which he could have impeached by showing M.W. was addicted to crack cocaine when she was fourteen years old, was a ninth-grade school dropout, had bad relationships with men and, although unmarried, had three children. However, the case was fifteen years' old at the time of Johnson's final arrest in February 2012, and it was reasonable to provide the State with an opportunity to prepare for trial by obtaining the results of the DNA testing, particularly when that evidence could have been favorable to Johnson. *See Shaw*, 117 S.W.3d at 889–90. Further, allowing the State to obtain evidence to develop its case is not the type of prejudice, such as loss of exculpatory evidence and dimming memories, that the right to speedy trial is intended to protect.[5] Overall, we conclude this factor does not weigh in favor of finding a violation of Johnson's right to a speedy trial.

### *Balancing of Factors*

Balancing the *Barker* factors, we conclude Johnson's right to a speedy trial was not violated. Although the length of the delay weighs in favor of finding a violation of Johnson's right to a speedy trial, much of the delay was due to Johnson's conduct and there were valid reasons for other delays in trying the case. Further, Johnson failed to assert his right until over sixteen years after he was first arrested; once he asserted his right, he sought a dismissal rather than a trial; the case proceeded to trial shortly after he filed his motion to dismiss; and he failed to demonstrate any prejudice that the right to a speedy trial is intended to prevent. The record in

---

[5] *See Rhone v. State*, No. 05-07-00729-CR, 2008 WL 2579681, at *3 (Tex. App.—Dallas June 30, 2008, pet. ref'd) (not designated for publication) (delay in trial to allow State to obtain DNA evidence that incriminated defendant "is not the kind of impairment, such as loss of exculpatory evidence and dimming memories discussed in *Barker*"); *Aimufua v. State*, No. 10-00-00223-CR, 2003 WL 22996901, at *3 & n.1 (Tex. App.—Waco Dec. 19, 2003, no pet.) (mem. op., not designated for publication) (Although State may not detain a defendant indefinitely without sufficient evidence to justify the detention, "we expressly reject any contention that a defendant suffers actionable 'prejudice' for purposes of a speedy trial claim because the delay has permitted the State to obtain additional incriminating evidence.").

this case supports a conclusion that Johnson did not really want a speedy trial; he wanted only a dismissal of the charges. *See Cantu*, 253 S.W.3d at 286; *Shaw*, 117 S.W.3d at 890.

We resolve Johnson's sole issue against him and affirm the trial court's judgment.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE


Do Not Publish
TEX. R. APP. P. 47

140204F.U05

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JIMMY ALBERT JOHNSON, Appellant

No. 05-14-00204-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial District Court, Grayson County, Texas,
Trial Court Cause No. 044441.
Opinion delivered by Justice Fillmore, Chief Justice Wright and Justice Bridges participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 21st day of January, 2015.