In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00071-CR


______________________________




JUSTIN ALLEN DOKTER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 30751-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 This is an appeal of the conviction by a jury of Justin Allen Dokter for the aggravated assault
of Timothy Driscoll, which occurred during a fight in a bar. Dokter claims that he was not afforded
his right to a speedy trial.

I. Description of Brawl

 On May 16, 2003, a dispute developed at a bar between Dokter and Driscoll; the incident
appears to have arisen primarily over a question of which person had the right to use the pool table
next. After the initial verbal confrontation, Charles Dennis Waldon, the bouncer, ordered both
Driscoll and Dokter to leave. Dokter exited the bar briefly as he had been ordered, but Driscoll
remained, playing pool. Dokter then returned and the dispute resumed, escalating to violence when
Dokter struck Driscoll, knocking him to the floor. Tim Johnson (1) and Jessica Goodwin, the
bartender, testified that they believed Driscoll hit his head on the pool table as he fell to the floor. 
After Driscoll fell, his friend, Matthew Wheeler, joined the fight with Dokter. While Dokter was
fighting Wheeler, (2) Patrick Puckett, who was Dokter's friend, entered the fray by hitting Driscoll in
the back of the head with a pool cue. (3) Driscoll may have been struck again while he was lying on
the floor. (4)

 Driscoll suffered severe, near-fatal brain injuries sustained during the melee, but received
almost immediate medical attention from patrons of the bar. (5) According to Dr. Tom Chow, one of
the doctors who treated Driscoll, it is impossible to isolate which particular event caused Driscoll's
brain trauma. Chow further testified it was unlikely that Driscoll's brain trauma was precipitated
solely by Dokter's punch or by a blow to Driscoll's head when he struck the pool table on the way
to the floor, but that a fall "down to the ground could have been a significant contribution." After
some waffling concerning whether a blow from a pool cue could have been sufficient to generate the
trauma that was suffered, Chow testified that the "most logical and reasonable conclusion" would
be that all of the events, taken together, caused the brain trauma and that any head injuries which
Driscoll received after the initial brain trauma occurred would have aggravated the trauma and its
effects. 

 Although Dokter was indicted for aggravated assault and aggravated assault with a deadly
weapon on July 23, 2003, the trial of this case did not begin until almost five years later. The jury
was instructed on the law of parties and the State relied upon the law of parties in its closing
argument. Dokter's primary argument in defense centered upon the theory that the first punch
(applied by Dokter) did not cause Driscoll's brain trauma and that Dokter neither encouraged,
directed, nor aided Puckett in the delivery of the other injuries which Driscoll suffered. The jury
found Dokter guilty of aggravated assault and assessed his punishment at five years' imprisonment. 
Dokter's sole issue on appeal is that his right to a speedy trial was violated. 

II. Speedy Trial Guarantees

 An accused's right to a speedy trial is guaranteed by both the Sixth Amendment to the United
States Constitution and the Texas Constitution. (6) Zamorano v. State, 84 S.W.3d 643, 647 nn.5 & 6
(Tex. Crim. App. 2002); see Barker v. Wingo, 407 U.S. 514, 530 (1972). When evaluating a claim
of a speedy trial violation, the reviewing court must use a balancing test, weighing the conduct of
the State against that of the defendant. Barker, 407 U.S. at 530; Shaw v. State, 117 S.W.3d 883, 888
(Tex. Crim. App. 2003). The court must consider, under the totality of the circumstances, the
following four factors: (1) the length of the delay, (2) the State's reason for delay, (3) whether the
delay was due to lack of diligence on the part of the State, and (4) whether the delay caused harm
to the accused. Shaw, 117 S.W.3d at 888-89; see Barker, 407 U.S. at 530. These four so-called
"Barker factors" are assigned varying weights by the court according to the individual facts of the
case, placed on the appropriate sides of the proverbial scales of justice, and weighed with and against
each other to determine if, on balance, the accused's right to a speedy trial has been violated. See,
e.g., Holmes v. State, 938 S.W.2d 488, 489-91 (Tex. App.--Texarkana 1996, no pet.). The four
factors must be considered together; no single factor is necessary to establish a violation or sufficient
by itself to establish a violation of the right to a speedy trial. Barker, 407 U.S. at 533; Dragoo v.
State, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). 

 Generally, a speedy trial claim will not be considered until a sufficient amount of time has
elapsed so as to present a prima facie case that the State's continued delay is unreasonable. Shaw,
117 S.W.3d at 889. "Until there is some delay which is presumptively prejudicial, there is no
necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530. The
period of delay "is measured from the time the defendant is arrested or formally accused." Shaw,
117 S.W.3d at 889. Once the defendant makes a prima facie showing of unreasonable delay, (7) the
reviewing court must consider the length of the delay as one factor among the remaining factors in
evaluating the accused's claim. Id. at 889. Almost five years passed between Dokter's arrest and the
trial. This lapse of time is sufficient to establish a prima facie showing of an unreasonable delay. 
See State v. Owens, 778 S.W.2d 135, 136-38 (Tex. App.--Houston [1st Dist.] 1989, pet. ref'd)
(seven-month delay established prima facie showing). We now turn to our analysis of the Barker
factors, mindful that "No one factor possesses 'talismanic qualities.'" Zamorano, 84 S.W.3d at 648
(quoting Barker, 407 U.S. at 533).

 In conducting our review, we defer to the trial court's evaluation of factual issues. Kelly v.
State, 163 S.W.3d 722, 726-27 (Tex. Crim. App. 2005). Although each individual factor necessarily
involves both fact determinations and legal conclusions, the balancing of the factors is purely a legal
question which should be reviewed de novo. Johnson v. State, 954 S.W.2d 770, 771 (Tex. Crim.
App. 1997). We overrule the State's argument that error was not preserved for our review. (8)

 A. Length of Delay Weighs in Favor of Violation

 The first factor to be considered is the length of the delay. Barker, 407 U.S. at 530;
Zamorano, 84 S.W.3d at 648-49. We measure the delay from the defendant's arrest or formal
accusation. Shaw, 117 S.W.3d at 889; Blaylock v. State, 259 S.W.3d 202, 208 (Tex.
App.--Texarkana 2008, pet. ref'd). Dokter testified that he was arrested in May 2003 and his trial
did not begin until March 10, 2008, a delay of fifty-eight months. A fifty-eight-month delay--almost
five years--is unacceptable. The length of delay weighs heavily in favor of finding that there was
a violation of the right to a speedy trial.

 B. State's Proffered Reason Weighs in Favor of Finding Violation

 Second, we must consider the reason or reasons the State provided in an attempt to justify
the delay. Barker, 407 U.S. at 531; Zamorano, 84 S.W.3d at 648-50. Sometimes, the government's
justifications under this second prong should be given greater or lesser weight, depending on the
relative merit of the reasons which are given. Barker, 407 U.S. at 531. "A deliberate attempt to
delay the trial in order to hamper the defense should be weighted heavily against the government." 
Id. A "neutral" justification (such as an overcrowded docket or mere negligence) "should be
weighted less heavily but nevertheless should be considered since the ultimate responsibility for such
circumstances must rest with the government rather than with the defendant." Id. "Finally, a valid
reason, such as a missing witness, would serve to justify appropriate delay." Id.

 The State provided several reasons for the delay. An affidavit signed by the attorney who
represented the State for the majority of the period of delay was introduced into evidence by
agreement of the parties. (9) The affidavit blamed the delay on the victim's hospitalization, difficulty
locating witnesses, plea negotiations, and a busy docket. This affidavit asserted that the victim was
undergoing treatment for approximately eighteen months and, after the victim was released from the
hospital, the State experienced difficulty in locating witnesses, particularly the bouncer at the bar. 
After the State had located most of the witnesses it sought, unsuccessful plea negotiations were
conducted. The affidavit also asserts that continuances were granted to both the State and the
defense and that continuances were granted to Dokter when his attorney relocated his offices to
Dallas from Longview. (10)

 Nevertheless, even with these explanations, the State's reasons failed to account for at least
a year's delay in the intervening period. The former assistant district attorney's affidavit stated that
after the victim's unrelated arrest for assault-family violence in 2006, he had "limited or no further
dealings with the case." We take judicial notice that the former prosecutor was elected district
attorney of another county and began serving in that capacity in January 2007; hence, he would not
have had connection with the case from that time forward. In addition, Dokter testified that the
defense had announced ready at the last docket call at which the case was called, an event which
occurred two or three years before the eventual trial. The docket sheet contains no entries on this
case for a period of four and a half years. The docket sheet indicates a continuance was granted on
September 12, 2003 until October 20, 2003, but is silent until January 25, 2008, when a hearing was
held on Dokter's motion to dismiss for failure to provide a speedy trial. The record does not contain
any motions or other documents concerning this case filed by either party from November 2003 until
January 2008. (11) Since the affidavit was the only evidence submitted by the State to justify the delay,
the State provided no reasons for the delay from sometime in 2006 (when the prosecutor originally
assigned to the case left the office to assume other duties) until 2008. 

 We note the State argued it had a busy docket. The State's "unreasonable delay" in a
run-of-the-mill (12) criminal case cannot be justified merely by suggesting that the State has a backlog
of cases or a shortage of staff. Ex parte Martin, 33 S.W.3d 843, 846-47 (Tex. App.--Austin 2000),
pet. dism'd, improvidently granted, 46 S.W.3d 932 (Tex. Crim. App. 2001). "The government must
bear responsibility for failing to provide adequate resources to law-enforcement agencies." Id. at
847. Accordingly, we cannot conclude, even after giving almost total deference to the trial court's
implied findings of fact, that the State's proffered reasons for the delay justifies the nearly five-year
delay. The second Barker factor weighs slightly in favor of a finding of a speedy trial violation.

 C. Failure to Assert Speedy Trial Right Weighs Against Finding Violation

 The third factor is concerned with the timeliness of a defendant's assertion of his right to a
speedy trial. See Barker, 407 U.S. at 529, 531-32; Zamorano, 84 S.W.3d at 648, 651-52. The
United States Supreme Court has explicitly rejected the demand-waiver rule which requires a
defendant to demand a speedy trial or the right is waived. Barker, 407 U.S. at 529-30. However,
the Court also noted that the failure to timely seek a speedy trial makes it difficult for a defendant
to prevail. Id. at 532. 

 Dokter did not assert his right to a speedy trial until he filed his motion to dismiss on
January 18, 2008. Thus, Dokter did not assert his right to a speedy trial for almost fifty-five months. 
The Texas Court of Criminal Appeals has noted a defendant's failure to make a timely demand for
a speedy trial indicates strongly that he did not really want one and that he was not prejudiced by not
having one. Dragoo, 96 S.W.3d at 314. The longer the delay--the more likely it is that a defendant
who really wanted a speedy trial would take some action to obtain one. Id. A defendant's lack of
a timely demand for a speedy trial indicates the defendant did not really want a speedy trial, and the
inaction weighs more heavily against a violation the longer the delay becomes. Id. Further, the
Texas Court of Criminal Appeals has held moving for "a dismissal instead of a speedy trial weakens
[a speedy trial] claim because it shows a desire to have no trial instead of a speedy trial." Zamorano,
84 S.W.3d at 651 n.40. 

 We note it is uncontested that the parties were in good-faith negotiations for a plea bargain. 
The former prosecutor stated in his affidavit that plea negotiations were engaged in with the defense
counsel, but did not result in a final resolution. The record, though, is rather vague concerning the
plea negotiations and their breakdown. Dokter testified that his fellow defendant, Puckett, told
Dokter that Puckett's attorney told Puckett the charges would be dismissed. This double hearsay
statement not only has serious reliability concerns, but also fails to establish that an agreement had
been reached. Nor does the record establish the period of time such negotiations were pending. The
mere fact that plea negotiations were pending during some undefined peroid does not make a
significant difference. Almost all cases involve some plea negotiation; that is just a part of the
normal trial procedure. If the record contained evidence that a plea agreement had been reached and
relied upon by Dokter, such evidence might ameliorate Dokter's inaction to a certain extent. (13) In the
absence of such evidence, the record fails to contain any excuse for Dokter's failure to timely assert
his right to a speedy trial. The third Barker factor weighs heavily against a finding of a speedy trial
violation.

 D. Evidence of Prejudice Is Judicial Determination

 The last factor requires this Court to determine whether there is evidence of prejudice to the
accused attributable to the State's delay. Barker, 407 U.S. at 531-32; Zamorano, 84 S.W.3d at 648,
652-54. Once a defendant makes a prima facie showing of prejudice, the State has the burden to
establish the accused suffered no serious prejudice. Munoz, 991 S.W.2d at 826; State v. Jones, 168
S.W.3d 339, 349 (Tex. App.--Dallas 2005, pet. ref'd). "Prejudice . . . should be assessed in the light
of the interests of defendants which the speedy trial right was designed to protect." Barker, 407 U.S.
at 532. There are three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to
minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will
be impaired." Id. The last interest is the most important "because the inability of a defendant
adequately to prepare his case skews the fairness of the entire system." Id. 

 Dokter testified that he was released from jail on bond approximately six weeks after his
arrest. (14) Because Dokter was not in custody for most of the delay, the first protectable interest is of
minimal importance. Since there was no evidence presented that Dokter experienced anxiety or
concern regarding the looming prosecution, we give no consideration to the second subfactor
mentioned above. Therefore, only the last (and most important) interest is of concern in this case. 

 E. Record Contains Minimal Particularized Prejudice

 A defendant has the burden to make some showing of "prejudice," although a showing of
"actual prejudice" is not required. Munoz, 991 S.W.2d at 826. In Barker, the United States Supreme
Court found that there was insufficient evidence the accused suffered any prejudice as a result of
Kentucky's five-year delay in prosecuting him, even though he was incarcerated for ten months
during that delay. Barker, 407 U.S. at 534. The Court held the minimal prejudice of "living for over
four years under a cloud of suspicion and anxiety" and spending ten months in jail was insufficient. 
Id. None of the witnesses were unavailable when the case finally came to trial and the trial transcript
indicated only two minor lapses in memory among the witnesses who testified. Id. Dokter claims
that the record in this case contains sufficient evidence of particularized prejudice because he was
unable to locate several witnesses and the witnesses who did testify had significant memory
problems.

 At the hearing on the motion to dismiss, Dokter testified that there were several material
witnesses which could not be located. Dokter testified, "A lot of the people that were actually there
that night were not local, they were in town working." Dokter and his attorney made a number of
attempts to locate those witnesses. When asked on cross-examination to name the witnesses which
Dokter could not locate, Dokter testified he did not bring the list he had prepared with him and was
unable to provide any names. On redirect, Dokter was more particular, indicating that the defense
had been unable to contact Waldon, Adami, and David Melcher. (15) Although the State had provided
telephone numbers for Adami and Melcher, the State had not provided addresses, and the defense
had not been able to contact either witness. Because two of the three witnesses Dokter identified as
missing actually testified at trial, the record only contains evidence of one witness, Melcher, who
was unavailable. However, Dokter failed to provide any evidence regarding what he expected
Melcher's testimony would have been. To establish particularized prejudice based on an unavailable
witness, a defendant must present proof both of the efforts made to locate the witness and that the
witness would have benefitted his defense. See Phipps v. State, 630 S.W.2d 942, 947 (Tex. Crim.
App. [Panel Op.] 1982); Mabra v. State, 997 S.W.2d 770, 780 (Tex. App.--Amarillo 1999, pet.
ref'd); Clarke v. State, 928 S.W.2d 709, 716 (Tex. App.--Fort Worth 1996, pet. ref'd). Dokter failed
to establish particularized prejudice at the hearing on his motion to dismiss.

 Dokter argues the record of the trial demonstrates that most of the witnesses who did testify
suffered from lapses of memory and conflicting versions of the events. The record confirms that
Wheeler carried his police statement with him to the stand. A number of the witnesses, in trying to
recall specifics of the incident, made reference to the fact that the fight occurred five years ago. The
only witnesses not clearly associated with either the victim or Dokter were the bouncer and the
bartender. Both of these witnesses admitted to having trouble remembering. Goodwin, the
bartender, admitted there were parts of the event which she would not have recalled without referring
to the statement she gave to the police at a time closer to the incident. Waldon, the bouncer, testified
that he could not remember the precipitating cause of the original dispute between Driscoll and
Dokter. When asked if he remembered a rumor about Dokter having struck his girlfriend, Waldon
testified he did not remember. 

 Dokter also argues that several of the witnesses testified differently from statements they had
given previously, at a time closer to the time of the bar fight. The record confirms that at least two
witnesses' testimony differed from their prior statements to the police. Adami testified at trial that
he had struck Puckett after he saw Puckett hit Driscoll with a pool cue and that Puckett tripped over
Driscoll and fell to the ground near Driscoll. On cross-examination, Adami admitted that the
statement he provided to the police made no mention of a pool cue and that he had previously told
police that Puckett fell on top of Driscoll, not beside him. Detective David Cheatum testified that
Adami's statement to the police made no reference to a pool cue. Whereas Waldon testified at trial
that Dokter did not hit Driscoll while Driscoll was on the floor, Waldon had previously claimed that
Dokter hit Driscoll while Driscoll was on the floor. 

 Overall, however, the trial testimony does not demonstrate that most of the witnesses had
significant memory problems. Several of the witnesses denied having any memory problems. 
Wheeler, despite carrying his statement to the stand with him, testified he remembered the events
clearly. Johnson and Thomas McGonijl also testified that they remembered the events clearly. 

 While there is some evidence of prejudice in this case, the evidence is rather minimal. 
Witnesses often testify differently than their police statements and the use of prior police statements
to refresh memories is not out of the ordinary. The evidence in this case merely creates a suspicion
of prejudice, a suspicion which was not developed sufficiently to establish a prima facie case of
particularized prejudice.

 F. Role of Acquiescence in Delay

 Even if there is insufficient evidence of particularized prejudice, a sufficiently lengthy delay
may create a presumption of prejudice (also sometimes called presumptive prejudice). The United
States Supreme Court has recognized that a lengthy delay can be sufficient for prejudice to be
presumed. Doggett, 505 U.S. at 655. The Court noted:

 [T]hough time can tilt the case against either side . . . one cannot generally be sure
which of them it has prejudiced more severely. Thus, we generally have to recognize
that excessive delay presumptively compromises the reliability of a trial in ways that
neither party can prove or, for that matter, identify. While such presumptive
prejudice cannot alone carry a Sixth Amendment claim without regard to the other
Barker criteria, . . . it is part of the mix of relevant facts, and its importance increases
with the length of delay.


Id. at 655-56. The Texas Court of Criminal Appeals has noted "affirmative proof of particularized
prejudice is not essential to every speedy trial claim." Dragoo, 96 S.W.3d at 315; see Orand v. State,
254 S.W.3d 560, 570 (Tex. App.--Fort Worth 2008, pet. ref'd) (finding violation of right to speedy
trial based on presumptive prejudice when trial occurred fourteen years after offense). We note that
a five-year delay, under the appropriate circumstances, may be sufficient to create a presumption of
prejudice. (16)

 The primary difference between this case and those cases finding presumptive prejudice lies
in the fact that Dokter acquiesced in the delay. In Doggett, the trial court found that the accused was
unaware of the pending indictment for eight and a half years. Doggett, 505 U.S. at 653. The Court
emphasized that the delay was not extenuated by the defendant's acquiescence. Id. at 656. 
Presumptive prejudice is "extenuated . . . by the defendant's acquiescence" in the delay. Dragoo, 96
S.W.3d at 315 (quoting Doggett, 505 U.S. at 658). In Shaw, the Texas Court of Criminal Appeals
held the "appellant's longtime acquiescence in the delay" extenuated any presumptive prejudice. 
Shaw, 117 S.W.3d at 890. Dokter's acquiescence in the delay was longer than Shaw's acquiescence. 
There is no dispute that Dokter knew of the pending charges and failed to file a request for a speedy
trial until approximately fifty-five months after his arrest on those charges. Any presumptive
prejudice created by the fifty-eight-month delay was extenuated by Dokter's acquiescence in the
delay for almost fifty-five months. (17) As such, we are unable to conclude prejudice should be
presumed under the facts of this case. The last Barker factor weighs against a finding of a speedy
trial violation.

 G. Weighing of Barker Factors Is Judicial Decision

 Now that we have assigned the relative weight to each relevant factor, giving deference to
the trial court's findings of fact, we must consider the four Barker factors in the aggregate, along with
any other relevant circumstances as may be known by the reviewing court. Barker, 407 U.S. at 533;
Zamorano, 84 S.W.3d at 648, 654-55. We must balance the respective strengths of those factors
against the relative weights of the remaining factors "in light of 'the conduct of both the prosecution
and the defendant.'" Zamorano, 84 S.W.3d at 648; see also Barker, 407 U.S. at 530.

 As noted above, the almost five-year length of delay weighs heavily in favor of finding a
violation of the right to a speedy trial and the anemic reasons for the delay weigh slightly in favor
of finding a violation. However, these factors are outweighed by the remaining two factors. Dokter
failed to make a timely assertion of his right to a speedy trial. Because the record contains only
extremely marginal evidence of particularized prejudice and Dokter's acquiescence in the delay
extenuated any presumptive prejudice, the last and most important factor weighs against a finding
of a speedy trial violation. The trial court did not err in finding Dokter's right to a speedy trial was
violated based on the evidence presented in this case. 

III. Conclusion

 Although there is no good excuse for the almost five-year delay in this run-of-the-mill
criminal case, the record here does not demonstrate a violation of Dokter's right to a speedy trial. 
While the length of the delay and the State's explanations favor a finding that Dokter's right to a
speedy trial was violated, Dokter's failure to assert that right and the absence of evidence that the
delay occasioned prejudice to his ability to defend cause the record to fail to establish such a speedy
trial right violation. 

 We affirm.



 Bailey C. Moseley

 Justice


Date Submitted: January 27, 2009

Date Decided: February 13, 2009


Publish
1. Johnson was employed at the same hospital with Driscoll, but did not know him well.
Nevertheless, after the initial verbal confrontation, Johnson had told Driscoll that "we were going
to kind of get your back if something broke out." 
2. Sheri McCarty, Dokter's girlfriend, testified that the incident became a brawl and estimated
that at least three individuals attacked Dokter. 
3. McCarty testified she did not see Puckett hit anyone, but admitted to telling Puckett that he
needed to back Dokter up. 
4. Johnson testified that after Puckett had hit Driscoll with the pool cue, both Dokter and
Puckett punched Driscoll while he was lying on the floor. John Adami testified that Dokter punched
Driscoll while Driscoll was on the floor. According to Adami, he punched Puckett after Puckett
struck Driscoll with the pool cue. Adami testified he joined the fight because of the way Puckett hit
Driscoll with the pool cue. Wheeler testified that after he punched Dokter, Dokter jumped on top
of Wheeler and started punching Wheeler. 
5. After the fight had subsided, Driscoll had difficulty breathing and was bleeding in the brain. 
Wheeler, who was a nurse, immediately began performing CPR on Driscoll with the assistance of
another bar patron who was an EMT. Before the assault, Driscoll was employed as a nurse in the
intensive care unit. As part of his employment, Driscoll supervised and trained other nurses. 
Driscoll suffered permanent vision loss and still suffers from a number of cognitive problems. 
Although Driscoll is currently employed as a nurse, he was unable to work for several years, is
currently working in a different department, and does not supervise and train other nurses. 
6. While the Texas Constitution provides an independent speedy trial guarantee, the Texas
Court of Criminal Appeals has traditionally analyzed speedy trial claims using the same analytical
framework required under the United States Constitution. Zamorano, 84 S.W.3d at 648. 
7. The term "presumptively prejudicial," as used in this context of the Barker analysis, does
not involve a statistical probability of prejudice to the defendant; "it simply marks the point at which
courts deem the delay unreasonable enough to trigger the enquiry." Doggett v. United States, 505
U.S. 647, 652 n.1 (1992). This "presumptively prejudicial" threshold is a different context from the
presumptive prejudice discussion below. See State v. Munoz, 991 S.W.2d 818, 822 (Tex. Crim.
App. 1999) (explaining the different contexts).
8. We note the State argues Dokter failed to secure a ruling on his motion for new trial. At the
hearing on the motion to dismiss, the trial court refused to rule. The trial court stated: 


 [I]t's premature to [rule] until we see more about whether these witnesses are out
there. And really we need to find out what their memories are like. I'm concerned
about a five-year gap, asking someone to remember what took place. I'm not
prepared to grant a Motion to Dismiss on Speedy Trial at this particular moment.


Dokter requested a ruling at least three times during the trial. On the first occasion, the trial court
stated it would carry the motion with the case. On the second occasion, the trial court ruled the
motion was denied, but would be carried for a while. After the State rested, Dokter asked the trial
court to rule on the motion to dismiss, which had been "held under advisement up until this point." 
The trial court ruled, "It's denied," but stated, "Reserve the right to review it as the trial goes along." 
The State argues Dokter failed to obtain a ruling. The State has not provided this Court with any
authority to support its argument other than Rule 33.1 of the Texas Rules of Appellate Procedure. 
To preserve error for appeal, a defendant must (1) object, (2) state the grounds with sufficient
specificity, and (3) obtain an adverse ruling either expressly or implicitly. Tex. R. App. P. 33.1;
Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). This case is distinguishable from cases
where the trial court failed to rule, but stated it reserved the right to rule at a later point. See, e.g.,
Stone v. State, Nos. 12-06-00418-CR & 12-06-00419-CR, 2008 Tex. App. LEXIS 6738 (Tex.
App.--Tyler Sept. 10, 2008, no pets.) (mem. op., not designated for publication). In this case, the
trial court affirmatively ruled on the motion, but merely reserved the right to review sua sponte its
ruling. Because the trial court did not revisit the issue, its original definitive ruling still stands. Error
was preserved for our review.
9. The attorney had recently been elected district attorney in another county, and the parties
agreed to the introduction of the affidavit in lieu of testimony.
10. On cross-examination at the hearing on the motion to dismiss, Dokter admitted his attorney
had moved his office to Dallas at some point. Dokter did not testify when this occurred and testified
he was not aware of any impact the move had on his case. The affidavit filed by the former district
attorney likewise fails to specify when the office was moved. 
11. The record contains a letter from Dokter's attorney to another court concerning another case
which references a hearing in this case set for January 20, 2006. There is an unsigned notation which
provides "Reset Felony Hold to 3/27/06." 
12. The State presented no evidence that this case was complex or unusually difficult to
prosecute. Cf. Harris v. State, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992).
13. We have recently found a speedy trial violation in a case concerning Dokter's co-defendant,
Puckett, who was charged similarly with Dokter because of the same assault. Puckett v. State, cause
number 06-08-00085-CR. In Puckett, however, the defendant presented evidence of three witnesses
who could not be located and introduced evidence of what those witnesses' expected testimony
would be. Id. In contrast, the record here only establishes the existence of one missing witness and
fails to contain evidence of what was expected to have been elicited from that testimony. In Puckett,
there was evidence that a plea agreement had been reached, but not formalized; Puckett's defense
counsel took the stand and testified that the former assistant district attorney who was then in charge
of the case had announced in open court that the charges against Puckett would be reduced to a
misdemeanor, testimony which was borne out by the record of the court reporter. Id. The record in
Puckett also contained evidence that identified the period of years between the State's in-court
statement that "we have a deal" and the subsequent refusal by the successor prosecutor to honor that
agreement. Id. The evidence that a plea agreement had been reached in Puckett and relied upon by
Puckett and the quantity of proof as to the evidence which was expected to be provided by missing
witnesses were major distinctions between the two cases.
14. Dokter testified he was arrested for driving while intoxicated in another county while out
on bond, but had not served any additional time for this case. 
15. Waldon and Adami testified at trial.
16. See Zamorano, 84 S.W.3d 647 (four-year delay where defendant repeatedly asserted speedy
trial after two and a half years); Guajardo v. State, 999 S.W.2d 566, 570 (Tex. App.--Houston [14th
Dist.] 1999) (five-year delay created presumption of prejudice, but state rebutted the presumption);
State v. Flores, 951 S.W.2d 134, 144 (Tex. App.--Corpus Christi 1997, no pet.) (four-year lapse
between offense and indictment presumptively prejudicial).
17. Other Texas courts have held similarly when faced with both a lengthy delay and a lengthy
acquiescence in the delay. See Dragoo, 96 S.W.3d at 316 (three-and-a-half-year delay not
presumptive prejudice because of defendant's acquiescence); Pinnock v. State, 105 S.W.3d 130, 137
(Tex. App.--Corpus Christi 2003, no pet.) (no presumptive prejudice due to fifty-month delay when
defendant did not assert right); Harlan v. State, 975 S.W.2d 387, 391 (Tex. App.--Tyler 1998, pet.
ref'd) (four-year delay not presumptive when defendant failed to timely assert right).