

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00055-CR

DARRELL DEWAYNE COLBERT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 46603-B

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

Ten years after the date of the offense, a Gregg County jury convicted Darrell Dewayne Colbert of aggravated sexual assault of a child under fourteen years old, Colbert pled true to an enhancement, and the trial court sentenced him to sixty years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B). On appeal, Colbert argues that (1) the trial court erred when it denied his motion to dismiss for violation of his right to a speedy trial because ten years had elapsed from his arrest until trial, (2) the trial court erred in denying his motion for directed verdict based on the victim's unsure testimony, (3) his right to an attorney was violated, (4) the trial court erred in denying a mistrial for statements by the State violating his right to remain silent, (5) the trial court erred in denying his motion for mistrial based on a request to recuse the visiting trial judge, (6) his Confrontation Clause rights were violated, (7) the trial court erred in allowing the forensic interviewer to testify as the outcry witness, and (8) the trial court erred in denying his motion for mistrial based on jury misconduct.

Because we find that (1) Colbert's speedy trial rights were not violated, (2) the victim's testimony established sufficient evidence of the offense, (3) Colbert did not preserve the *Miranda*[1] rights issue, (4) Colbert did not preserve the right to remain silent issue, (5) Colbert did not preserve the recusal issue since he did not file a verified motion, (6) Colbert did not preserve the Confrontation Clause or any other issue, (7) the trial court did not err in allowing the forensic interviewer to testify as the outcry witness, and (8) Colbert forfeited the juror-bias issue because Colbert failed to request less drastic remedies, we affirm the trial court's judgment.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

## I.  Factual Background

On December 22, 2013, at 5 p.m., Mother and one of her sisters, Zipora, went to Shreveport to visit their father who was in the hospital.[2]  Mother asked Colbert, Zipora's boyfriend, to babysit her seven-year-old daughter, Jane Adam.[3]  Colbert asked Jane Adam if she "want[ed] to know why [her] aunt [told her earlier to] close [her] legs," then Colbert told Jane Adam to "go to [her grandfather's] room and pull down [her] pants."  Jane Adam went into her grandfather's room, "got under the covers, and pulled [her] pants down."  Colbert took off his clothes and penetrated her vagina with his penis.

On March 14, 2024, the jury convicted Colbert of aggravated sexual assault of a child under fourteen years old, he pled true to an enhancement, and the trial court sentenced him to sixty years' imprisonment.

## II.  The State Did Not Violate Colbert's Right to a Speedy Trial

In his first point of error, Colbert argues that the trial court erred when it denied his motion to dismiss for a speedy-trial violation because ten years elapsed from the time of his arrest until his trial.

### A.  Standard of Review and Relevant Law

"An accused['s] . . . right to a speedy trial [is guaranteed] under the Sixth Amendment of the United States Constitution and Article I, section 10, of the Texas Constitution."  *Velasco v.*

---

[2]Mother initially said that they were visiting their father in the hospital.  Mother changed her mind, and they went to the casino in Shreveport instead.

[3]We use a pseudonym to refer to the child and describe witnesses and their relations in a manner to protect the identity of the child.  *See* TEX. R. APP. P. 9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

*State*, 678 S.W.3d 258, 263 (Tex. App.—San Antonio 2023, no pet.) (citing *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002)). The speedy-trial factors are (a) "length of the delay," (b) "reasons for the delay," (c) "assertion of the right," and (d) "prejudice caused by the delay." *Id.* at 264; *see Barker v. Wingo*, 407 U.S. 514, 530 (1972). No one factor is determinative, and all factors "must be considered together along with . . . relevant circumstances" on a case-by-case basis. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). "In conducting the balancing test, no single factor is determinative, and the conduct of both the prosecutor and the defendant are to be weighed." *Blaylock v. State*, 259 S.W.3d 202, 208 (Tex. App.—Texarkana 2008, pet. ref'd). Almost total deference is given "to historical findings of fact of the trial court that the record supports[,] and [we] draw reasonable inferences from those facts necessary to support the trial court's findings." *Gonzales v. State*, 435 S.W.3d 801, 808–09 (Tex. Crim. App. 2014).

B. **Analysis**

1. **Length of the Delay**

The first *Barker* factor is the length of delay. "The length of delay is a double inquiry: A court must consider whether the delay is sufficiently long to even trigger a further analysis under the *Barker* factors, and if it is, then the court must consider to what extent it stretches beyond this triggering length." *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017). "In general, courts deem delay approaching one year to be 'unreasonable enough to trigger the *Barker* enquiry.'" *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016) (quoting *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)). "The first factor, the length of the delay, is

4

measured from the time the defendant is arrested or formally accused." *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). Because the delay in this case was ten years, the minimum requirement to trigger a *Barker* analysis is met.

Once the *Barker* analysis is triggered, we must then analyze the second part of the inquiry—"to what extent it stretches beyond this triggering length." *Hopper*, 520 S.W.3d at 924. The complexity of the case is a consideration to determine the weight given to this factor. "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531. Colbert was indicted with one count of aggravated sexual assault of a child under fourteen years old and one count of indecency with a child by sexual contact.[4] This was a first-degree-felony trial with DNA evidence. Even though the nature of the case was complex, a ten-year delay stretches "far beyond the minimum needed to trigger the [*Barker*] enquiry." *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). Accordingly, the nature of the case weighs in favor of Colbert.

### 2. Reason for the Delay

"[D]ifferent weights should be assigned to different reasons" which give rise to the delay. *Barker*, 407 U.S. at 531. "A deliberate attempt to delay the trial . . . should be weighted heavily against the government." *Id.* "A more neutral reason such as negligence or overcrowded courts should be weighted [against the government] less heavily . . . ." *Id.* A valid reason for the delay should not be weighed against the government at all. *Id.* When the State offers no reason for the delay, this factor will "weigh[] in favor of finding a violation of the right to a speedy trial."

---

[4]The second count was abandoned before voir dire began.

5

*Dragoo*, 96 S.W.3d at 314. The failure to offer any reason to justify the delay will not necessarily "weigh heavily in favor of such a finding." *Id.* When no reason is offered, we may presume that the reason lies somewhere between a deliberate delay and a valid reason that would justify the delay. *See id.*

### a. Arrest to Indictment

Colbert was arrested on December 27, 2013. Less than two months after his arrest, the DNA kit from the sexual assault nurse examiner's (SANE) examination was submitted to the crime laboratory. Colbert's swab was not submitted until June 15, 2015. The DNA analysis laboratory report was returned on March 23, 2017. The laboratory report shows DNA evidence from a fitted sheet from the bedroom with a "likelihood ratio" that "the suspect cannot be excluded as a possible contributor to the profile." The next month, and three years after Colbert's arrest, the grand jury issued the indictment.

Generally, a delay based on DNA results does not weigh heavily against the State if the reason for delay is not deliberate. *Sample v. State*, 653 S.W.3d 287, 293–94 (Tex. App.—Austin 2022, pet. ref'd); *see Fuller v. State*, 624 S.W.3d 855, 864 (Tex. App.—Fort Worth 2021, pet. ref'd). The record does not reflect any specific reason for the three-year delay in DNA testing other than a cursory statement about waiting on DNA results and the laboratory being "extremely busy." A silent record is presumed against the State. *See Turner v. State*, 545 S.W.2d 133, 137–38 (Tex. Crim. App. 1976). However, "[i]n the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Dragoo*, 96 S.W.3d at 314. The State's explanation about a

6

delay in laboratory results does not account for the one-and-one-half-year delay in submitting Colbert's swab to the crime laboratory. The initial one-and-one-half-year delay weighs against the State.

The rest of the delay for the DNA results is weighed neutrally. Kristi Link, the DNA analyst with the Texas Department of Public Safety, testified at trial that her office had received "emails" about the status of the case from the Gregg County District Attorney's Office and had a substantial backlog around March 2016. That accounts for March 2016 until the indictment.

Balancing this time period involves several different factors, the initial delay versus later the State's diligence and the DNA backlog, and nothing shows any deliberate attempt by the State to delay the trial or hamper Colbert's defense. However, the one-and-one-half-year delay in submitting the sample to the crime laboratory caused this period to weigh slightly against the State.

### b. Indictment to Trial

The delay from indictment to trial was approximately seven years. After indictment, there was no activity for the first three years—no dockets or motions. During the remaining four-year period, Colbert acquiesced to several resets. *See id.* at 315. The trial court reset the case three times in the latter months of 2020 for an upcoming status docket.[5] On November 2,

---

[5]Even though there was no indication in the record that any delay at the start of trial was attributed to the coronavirus pandemic, this Court takes judicial notice of the pandemic and the orders of the Texas Court of Criminal Appeals pausing all trials during this timeframe. *See* TEX. R. EVID. 201(c)(1); First Emergency Order Regarding the COVID-19 State of Disaster, 596 S.W.3d 265 (Tex. 2020) (order dated March 13, 2020, start of the pandemic); Thirty-Eighth Emergency Order Regarding COVID-19 State of Disaster, 629 S.W.3d 900 (Tex. 2021) (order dated May 26, 2021, to expire August 1, 2021) (allowing jury trials if proper protocols are undertaken). "The delays caused by the pandemic do not weigh against the State." *Roque v. State*, 693 S.W.3d 771, 777 (Tex. App.—Houston

2020, the State announced ready for trial. Colbert's counsel stated, "I'm fine with that, Your Honor," in response to the trial court placing the case on the February 2021 trial docket. The record is silent from November 2, 2020, until October 11, 2021, when Colbert's counsel requested a continuance of trial because of jury duty. On March 24, 2023, Colbert's counsel filed an agreed motion to withdraw, and Colbert explicitly agreed to move the case until the May 2023 status docket. Colbert stated he was planning on hiring his own attorney. Delay attributable to attorney withdrawal due to conflict weighs against Colbert. *See Harper v. State*, 567 S.W.3d 450, 461 (Tex. App.—Fort Worth 2019, no pet.) (stating that, in the context of that case, changing counsel, was "consistently designed to benefit or accommodate [the defendant], not the State"). From October 18, 2021, until trial, the case was reset thirteen times. The trial was also reset because Jane Adam's mother died on March 8, 2023.

From indictment to trial, there is no evidence that the State deliberately delayed Colbert's trial for strategic gain. After considering Colbert's repeated acquiescence after the motion to dismiss, the State's negligence during the first year and a half, and events out of the State's control for the remaining period, the second *Barker* factor weighs neutrally.

### 3. Assertion of the Right

Next, the burden is placed on Colbert to timely "assert his right to a speedy trial." *Cantu*, 253 S.W.3d at 282 (citing *Barker*, 407 U.S. at 527). "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Id.* at 283. A defendant's "lack of a timely [and persistent] demand for a

---

[14th Dist.] 2024, no pet.) (citing *State v. Conatser*, 645 S.W.3d 925, 930 (Tex. App.—Dallas 2022, no pet.) ("Delay caused by the onset of a pandemic cannot be attributed as fault to the State.")).

speedy trial indicates strongly that he did not really want a speedy trial," *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992), and "that he was not prejudiced by [the] lack of one," *Dragoo*, 96 S.W.3d at 314.

Although Colbert filed a motion soon after the indictment, he merely requested a dismissal and did not subsequently re-urge this right to the trial court in any way. *See id.*; *Balderas*, 517 S.W.3d at 771; *Cantu*, 253 S.W.3d at 284 ("Under *Barker*, appellant's failure to diligently and vigorously seek a rapid resolution is entitled to 'strong evidentiary weight.'" (quoting *Barker*, 407 U.S. at 531–32)). Thus, Colbert's lack of persistence indicated more of a desire to avoid trial than a desire to obtain a speedy trial. *See Emery v. State*, 881 S.W.2d 702, 709 (Tex. Crim. App. 1994).

We find that Colbert's failure to pursue a speedy trial weighs heavily against Colbert.

### C.     Prejudice to the Accused

The fourth *Barker* factor places the burden on Colbert to prove a prima facie case of prejudice. *See Webb v. State*, 36 S.W.3d 164, 174 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (en banc). Prejudice occasioned by the delay in proceeding to trial is assessed in the light of the three interests the right to a "speedy trial was designed to protect": (1) freedom from "oppressive pretrial incarceration," (2) mitigation of the "anxiety and concern" on the part of the accused that accompanies a public accusation, and (3) avoidance of impairment to the defense of the charges. *Barker*, 407 U.S. at 532. "Although the appellant need not show actual prejudice, he must make a *prima facie* showing of prejudice." *Webb*, 36 S.W.3d at 174. The first two protected interests are not implicated here; Colbert's pretrial incarceration was ninety-six days,

9

and there is nothing in the record that shows Colbert suffered anxiety or concern. *See Barker*, 407 U.S. at 534.

With respect to the third protected interest, Colbert argues that "the original outcry witness . . . died," and "witness recollection became stale." "With respect to the fourth [*Barker*] factor, prejudice, the accused generally bears the burden to show the delay harmed him in some manner." *State v. Beck*, 695 S.W.3d 729, 740 (Tex. App.—Houston [1st Dist.] 2024, no pet.). "Before such a contention will amount to 'some showing of prejudice,' the appellant must show that the witnesses are unavailable, that their testimony might be material and relevant to his case, and that he has exercised due diligence in his attempt to find them and produce them for trial." *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973).

At trial, Mother's sister, Joynella, testified to Mother's outcry statements,[6] and the responding officer testified to statements made by Mother. Colbert was not able to cross-examine Mother about those relevant statements but had the opportunity to cross-examine Jane Adam about those statements. Colbert's conclusory argument does not explain what testimony was material, how Mother's testimony would have materially affected his defense, "or support his argument with the record." *Deeb v. State*, 815 S.W.2d 692, 706 (Tex. Crim. App. 1991); s*ee Beck*, 695 S.W.3d at 749; *Palacios v. State*, 225 S.W.3d 162, 170 (Tex. App.—El Paso 2005, pet. ref'd). Therefore, Colbert has not shown what or how the testimony would have been material, and this factor weighs against Colbert.

---

[6]Joynella testified that Mother had told her that Jane Adam told Mother that Colbert "had sex with [Jane Adam]." Joynella continued, "It was -- hunched, hunched, bumped her, something bumped, I think it what it was that she said." The trial court allowed those statements as an excited utterance.

### D.    Balancing the Factors

"[C]ourts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Cantu*, 253 S.W.3d at 281. Although the ten-year delay and the State's initial negligence in the delay weighs in Colbert's favor, all the other *Barker* considerations weigh against finding a violation of Colbert's speedy-trial right— especially not ever invoking a right to a speedy trial. We find that the weight of the factors, when balanced together, weighs against Colbert and that his right to a speedy trial was not violated.

As a result, we overrule Colbert's first issue.

## III.    The Trial Court Did Not Err in Denying the Motion for Directed Verdict

In the second point of error, pointing to (1) vague statements by the victim, (2) the SANE examiner's testimony that she found no physical evidence of sexual abuse, and (3) the testimony of Colbert's wife, Colbert argues that the evidence was legally insufficient to support his conviction.

### A.    Standard of Review and Applicable Law

The trial court's denial of "a motion for a directed verdict [i]s a challenge to the legal sufficiency of the evidence." *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). In determining legal sufficiency, we consider all the evidence in the light most favorable to the trial court's judgment "to determine whether '*any* rational [jury] could have found the essential elements of [the offense] beyond a reasonable doubt.'" *Brooks v. State*, 323 S.W.3d 893,

11

902 n.19 (Tex. Crim. App. 2010) (plurality op.) (quoting *Jackson v. Virginia*, 443 U.S. 307 (1979)). Deference is given to the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319). Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015).

### B. Analysis

The indictment alleged that, on or about December 22, 2013, Colbert penetrated Jane Adam's sexual organ with his sexual organ. A defendant commits aggravated sexual assault of a child under fourteen years old if he intentionally or knowingly causes the penetration of the sexual organ of a child younger than fourteen years of age. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B).

Joynella testified that Jane Adam was seven years old at the time of the sexual assault. Jane Adam testified that her mother and Zipora left for the day and asked Colbert to babysit Jane Adam. Later, while Jane Adam was eating cereal, Colbert told her to "go to [her grandfather]'s room and pull down [her] pants." Jane Adam went into her grandfather's room, "got under the covers, and . . .pulled [her] pants down." Colbert took off his clothes, stepped onto a stool, and penetrated her vagina with his penis. Colbert asked her if it hurt, and she replied yes. Colbert told her to turn over, and she complied by laying on her stomach. Then, Colbert tried to penetrate her backside but did not succeed.

12

Jane Adam told Mother almost immediately after she got back home. After Mother reported Jane Adam's allegations, Jane Adam was taken to a hospital for a SANE examination and then a forensic interview the next day. During the interview, Jane Adam told the forensic interviewer substantially the same account as she later testified to. The forensic interviewer testified to Jane Adam's statements during the forensic interview as the outcry witness.

Link testified that "obtaining the DNA profile [of the sperm cell fraction from the fitted sheet was] 30.4 sextillion times more likely if the DNA came from the suspect than if the DNA came from an unrelated unknown individual." The contributor was a single individual. Link further testified that Colbert could not "be excluded as a possible contributor" of the sperm cell fraction found on the fitted sheet from the bedroom. Link testified that the "DNA profile for the epithelial cell fraction from the stain from the fitted sheet [was] interpreted as a mixture of two individuals" and that "obtaining the mixture profile [was] 651 decillion times more likely if the DNA came from the victim and the suspect than if the DNA came from two unrelated unknown individuals." She continued, "Based on the likelihood ratio result, the victim and the suspect cannot be excluded as possible contributors to the profile."

Jane Adam's testimony alone was legally sufficient because it established that Colbert intentionally or knowingly penetrated Jane Adam's sexual organ with his sexual organ, as alleged in the indictment. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). Any defensive issue created a fact and credibility issue that the jury resolved prior to entering its verdict. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Viewing the evidence in the light most favorable

13

to the verdict, we find the evidence legally sufficient to support Colbert's conviction. We overrule Colbert's second point of error.

## IV. Colbert Did Not Preserve the *Miranda* Issue

In the third point of error, Colbert argues that, since he requested an attorney prior to the interview, the trial court improperly allowed the recording of the custodial interview to be played for the jury, and Colbert's DNA sample should have been excluded.

To preserve error concerning the erroneous admission of evidence, a defendant must timely lodge a specific objection. TEX. R. EVID. 103(a)(1); *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); *Cacy v. State*, 901 S.W.2d 691, 699 (Tex. App.—El Paso 1995, pet. ref'd). A "complain[t] about the admissibility of a confession, even in regard to a violation of Miranda, and other federally guaranteed constitutional rights," requires "an objection in the trial court." *Ex parte Bagley*, 509 S.W.2d 332, 333 (Tex. Crim. App. 1974) (orig. proceeding).

Even though Officer Audrey Wright of the Longview Police Department testified, "He said he'd like to talk to one," Colbert was required to put the trial court on notice that he challenged the admission of the recording of the custodial interview and the testimony from the officer about the content of the custodial interview. *See* TEX. R. APP. P. 33.1. Colbert did not (1) file a pretrial motion to suppress alleging a right-to-an-attorney issue, (2) request a motion to suppress hearing or get a ruling, or (3) provide a specific objection and only objected generally to "hearsay grounds and Fifth Amendment grounds" at the time the evidence was admitted. *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005). Therefore, this issue has not been preserved for our review. We overrule Colbert's third point of error.

14

## V.      Colbert Did Not Preserve the Right to Remain Silent Issue

In his fourth point of error, Colbert argues that the State's improper statement during voir dire violated his right to remain silent by shifting the burden of proof to Colbert. Colbert complains of the following statement:

> [D]efendant does have the same rights and abilities as the State to put on any evidence. They can call any witness that they want to appear in front of you on the stand. They have the same subpoena power as the State does. So while they are not required to, they do still have the same ability.

A state's comment on the defendant's failure to testify may violate a defendant's right not to testify against himself. *See Griffin v. California*, 380 U.S. 609, 614–15 (1965); *Hall v. State*, 13 S.W.3d 115, 117 (Tex. App.—Fort Worth 2000, pet. dism'd). However, Colbert failed to object to the complained-of statement. A timely, specific objection must have been made to preserve this issue for appeal. *Rezac*, 782 S.W.2d at 870; *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). Therefore, the issue was not preserved for review. We overrule Colbert's fourth point of error.

## VI.      The Trial Court Did Not Err in Denying the Motion for Mistrial

In his fifth point of error, Colbert argues that the trial court erred in denying his motion for mistrial based on Colbert's request for the sitting judge to recuse herself since the sitting judge was originally listed on the State's witness list. Rule 18a of the Texas Rules of Civil Procedure "applies to recusal and disqualification matters in criminal cases[,] absent a legislative declaration to the contrary." *Sanchez v. State*, 926 S.W.2d 391, 394 (Tex. App.—El Paso 1996, pet. ref'd) (per curiam); *see* TEX. R. CIV. P. 18a. When a recusal motion is filed, the trial court against whom the motion is directed "may properly make the initial determination [of] whether a

15

recusal motion is in compliance with the rule" governing recusal or disqualification of the judge. *Sanchez*, 926 S.W.2d at 396. Rule 18a requires that the recusal motion be verified. TEX. R. CIV. P. 18a(a)(1). Colbert did not file a verified motion and thus did not meet the minimum requirements of Rule 18a. Therefore, we overrule Colbert's fifth point of error.

## VII.	Colbert Does Not Prevail on Confrontation Clause or Excited Utterance

In his sixth point of error, Colbert argues that allowing Joynella to testify to statements made by Mother—who died before the trial—violated the Confrontation Clause. "[P]reservation of error is [a] systemic" requirement that this Court reviews "on its own motion." *Archie v. State*, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007). Colbert raises several arguments within this point of error: (1) his Confrontation Clause rights were violated, (2) the trial court improperly admitted hearsay as an excited utterance, (3) whether an excited utterance can be testimonial, and (4) double hearsay violated his Confrontation Clause rights.

At trial, Colbert only stated, "That's clear hearsay." A hearsay objection does not preserve a Confrontation Clause or double hearsay issue. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (Confrontation Clause); *Freeman v. State*, 230 S.W.3d 392, 403 (Tex. App.—Eastland 2007, pet. ref'd) (double hearsay). Therefore, Colbert did not preserve any Confrontation Clause, double hearsay, or related issue.

On appeal, Colbert also argues that the excited-utterance exception does not apply to statements "not made by the person whom the traumatic event happened to." Even if we were to find error in the admission of Joynella's testimony on that basis, Colbert did not brief the harm issue.

16

Colbert was required to include "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i); *see Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000). For harm, Colbert merely argues, "This testimony provided some of the only narrative the jury heard of the alleged assault." Colbert does not provide any citations to the record or authority for the appropriate harm standard or anything that would substantiate this claim. Jane Adams herself testified to the assault.

We overrule Colbert's sixth point of error.

## VIII. The Trial Court Did Not Err by Allowing Outcry Statements by the Forensic Interviewer

In his seventh point of error, Colbert argues that the true outcry witness was Mother, and she died prior to trial.

### A. Standard of Review

"We review [a] trial court's decision to admit . . . an outcry [statement under] an abuse of discretion" standard. *Owens v. State*, 381 S.W.3d 696, 703 (Tex. App.—Texarkana 2012, no pet.) (citing *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)). We will uphold the trial court's ruling if it is within "the zone of reasonable disagreement." *Id.* (citing *Divine v. State*, 122 S.W.3d 414, 420 (Tex. App.—Texarkana 2003, pet. ref'd)).

### B. Applicable Law

"Hearsay is not admissible [at trial] except as provided by statute or" by the Texas Rules of Evidence. *Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990) (per curiam) (quoting TEX. R. CRIM. EVID. 802). Article 38.072 of the Texas Code of Criminal Procedure establishes an exception to the hearsay rule, applicable in proceedings for prosecution of sexual offenses, for

17

statements describing the offense made by a child "to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense or extraneous crime, wrong, or act." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3) (Supp.). To be admissible under Article 38.072, outcry testimony must be elicited from the first adult to whom the outcry is made. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011).

## C. Analysis

"[T]he 'first person' refers to the first adult who can remember and relate at trial the child's statement that, in some discernible manner, describes the alleged offense." *Reynolds v. State*, 227 S.W.3d 355, 369 (Tex. App.—Texarkana 2007, no pet.) (quoting *Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd). As stated in *Foreman v. State*,

> [T]he societal interest in curbing child abuse would not be served if we interpreted the statute to require that the [statutory] "first person" could only be the person to whom the child made [an] outcry even though that person did not hear, did not remember, or did not understand what the child was saying.

*Foreman v. State*, 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd). Colbert does not challenge the fact that Mother died prior to trial. Obviously, Mother cannot relate those statements to the jury. Colbert also does not challenge that the forensic interviewer qualified as an outcry witness. The trial court did not abuse its discretion by allowing the forensic interviewer to relate the outcry statements to the jury.

Therefore, we overrule Colbert's seventh issue.

18

## IX. Colbert Forfeited the Juror-Bias Issue

In his eighth point of error, Colbert argues that a defense witness overheard an unknown juror state that Colbert was guilty. Colbert argues that the statement by the juror demonstrated bias and impartiality that required a mistrial.

"An appellant who moves for a mistrial without first requesting a less drastic alternative forfeits appellate review of that class of events that could have been cured by the lesser remedy." *Ocon v. State*, 284 S.W.3d 880, 886–87 (Tex. Crim. App. 2009). "Curative instructions frequently serve as effective alternatives to the extreme remedy of a mistrial, and there is no indication that the . . . instructions subsequent to the [offending] juror's [alleged] misconduct failed to remedy the situation." *Id.* at 887.

During the middle of trial, Colbert informed the trial court that a defense witness overhead two jurors in the hallway discussing the case and moved for a mistrial. The trial court held a hearing, and Colbert called the defense witness, Zipora, to testify to what she heard in the hallway. Zipora testified that one juror told another juror in the hallway, "Oh, he's guilty." Zipora confirmed that she has been in a relationship with Colbert for the last thirteen years and stated, "I know he is not guilty." The trial court denied the motion for mistrial. The trial court re-admonished the jurors: "Folks, remember, when I said don't discuss the case, I mean don't make any comments, not even mention this case during your breaks."

Colbert did not object to the trial court's plan to re-admonish the jury to correct any potential issues. He also did not request any reasonable alternatives such as juror questioning. *See id.* at 886. Colbert only requested a mistrial. We can also assume that Colbert was satisfied

19

with the trial court's plan of action since Colbert did not request any alternative remedies. *See id.* at 888. "There is no evidence that residual prejudice remained after [that] instruction[] [was] given." *Id.* Colbert has not presented any argument to suggest that any potential issue was not curable. *See id.*

Giving the appropriate deference to the trial court, we find no abuse of discretion in the trial court's conclusion that the extreme remedy of a mistrial was not required. *See Quinn v. State*, 958 S.W.3d 395, 402 (Tex. Crim. App. 1997).

As a result, we overrule Colbert's eighth point of error.

## X.    Conclusion

We affirm the trial court's judgment.[7]


Jeff Rambin
Justice


Date Submitted:     December 11, 2024
Date Decided:       March 13, 2025

Do Not Publish

---

[7]After briefing was complete, Colbert's counsel moved to withdraw. That motion is denied.

20